J. EMMETT WELLS, as Executor, etc., Respondent, *v.* THE TOWN OF SALINA, Appellant.

The powers of towns, and *it seems* other municipal corporations organized for governmental purposes, are limited and defined by the statutes under which they are constituted; they possess only such powers as are expressly conferred by statute or necessarily implied.

Towns have no general power to borrow money for municipal purposes or to pay town charges, but *it seems* it is the policy of the law that such charges shall be met by taxation, and a town may not be made liable for money borrowed on its credit simply because it has been applied for town purposes.

An action having been commenced by certain taxpayers of the town of S. in their own behalf and that of other taxpayers to restrain the enforcement of certain town bonds, and to have the law under which they were issued adjudged unconstitutional, a resolution was adopted at an annual town meeting authorizing the supervisor of the town, on consent of the plaintiffs in said action, to assume control thereof, prosecute it to a final determination and pay all the expenses; and for that purpose to borrow on the credit of the town all sums of money needed. The supervisor, acting in accordance with the resolution, borrowed money on the credit of the town, giving its notes therefor, which money was used for the purpose specified. In an action upon the notes, *held*, that, assuming

the electors of the town had power to authorize its supervisor to take control of the pending action; also, that it might be treated as if commenced in the name of the town or its supervisor, and that said electors had power to direct money to be raised for prosecuting that action, still this action was not maintainable.

The authorities upon the subject of the power of municipal corporations to borrow money collated.

(Argued January 17, 1890; decided February 25, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made July 2, 1888, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at circuit without a jury.

In the year 1870 the town of Salina, under chapter 570 of the Laws of 1868, issued its bonds to the amount of $120,000, payable twenty years thereafter, with interest at seven per cent, payable on the first days of August and February of each year. By the terms of section 4 of the act of 1868, the railroad commissioner of the town, an officer created under section 1 of the act, was required "to report to the board of supervisors of the county wherein said town or village is situated, within three days after the commencement of their regular session in each year, the amount of money required to pay the principal and interest on the bonds thus issued, due or to become due and payable during the next ensuing year, after deducting any sums received as dividends on the stock of said company, held by said town or village, which must be first applied to the payment of such principal and interest; and the said board of supervisors shall thereupon cause to be assessed, levied and collected upon such of the real and personal property of the said town or village at the same time and in the same manner as other taxes, such amount of money as shall be thus reported as necessary to pay such principal and interest, and such amount when collected shall be paid and applied by the commissioners to the payment of the said principal and interest of the bonds aforesaid."

In pursuance of this provision the railroad commissioner of the town of Salina, with moneys raised for that purpose, paid

the interest upon the bonds as it became due to and including August 1, 1880. On December 1, 1880, he presented to the clerk of the board of supervisors a report directed to the board, in which, in conformity with the provisions of the act, he stated the amount required to pay the principal and interest to become due during the next ensuing year. That report was taken by the supervisor of Salina and no action was taken thereon by the board of supervisors. On the 27th of January, 1881, Francis Alvord, who was then supervisor of the town, and Leman B. Pitcher, commenced an action as individuals and taxpayers, in behalf of themselves and all other taxpayers of the town who might come in and contribute to the expense of the action, against various of the bondholders and the railroad commissioner of the town, to restrain the latter from performing the acts required of him by the statute and the former from enforcing their securities. At the same time an injunction was served upon the defendants restraining the railroad commissioner from paying any of the bonds or coupons and from taking any measures for raising money for the payment of such interest. Judgment was demanded in that action, among other things, that the bonds mentioned in the complaint be declared void and surrendered up to be canceled; that all the proceedings for issuing the bonds be adjudged invalid and void; that the statute under which they were issued be declared unconstitutional and void; that the defendants be enjoined from selling, transferring or disposing of any of said bonds in their possession, custody or control during the pendency of the action and until the further order of the court, without giving to the purchaser or purchasers thereof notice of the pendency of the action.

The next annual meeting of the town of Salina, after the commencement of that action, was held on February 15, 1881, and a resolution was there duly adopted which, after reciting the commencement of the action by Alvord and Pitcher as taxpayers of the town of Salina on behalf of themselves and all other taxpayers of the town who would contribute to the

expenses of the action, requested, authorized and required the
supervisor of the town and his successor or successors in
office, " to assume the direction and conduct of such action
and the prosecution of the same, if permitted by said plain-
tiffs, and to prosecute the same to a final judgment, and to pay
all the expense of such prosecution, and to employ counsel
and to borrow upon the credit of the town all such sums of
money from time to time as may be necessary for the prosecu-
tion of said action."   At a town meeting held in February,
1882, another resolution was adopted " authorizing and
requiring the supervisor to borrow on the credit of the town
not to exceed $8,400, the amount so raised by him to be used
in his discretion for the payment of the expense already
incurred, by the litigation then pending, for the purpose of
setting aside and cancelling the bonds issued by the town, in
aid of the Syracuse Northern Railroad Company, and for the
purpose of defending the same against any suit or proceeding
which might be brought against the town ; and the town
board was authorized and required to put that amount into
the abstract of town accounts, to be presented to the board of
supervisors at its next annual session, to be levied on the town
with other taxes."

In pursuance of the first resolution, for the purpose of
raising money to defray the expenses of that action, the super-
visor, on behalf of the town, made three promissory notes, one
dated March 9, 1881, for $1,500, one dated December 21, 1881,
for $500, and one dated December 31, 1881, for $1,500 ; and
in pursuance of both resolutions he made another note for
$500, dated April 29, 1882.   Upon these notes $4,000 was
borrowed of the plaintiff's testator, Samuel H. Hinsdale, and
the money so borrowed was used to defray the expenses of the
action named.   That action was brought to trial and complaint
was dismissed.   An appeal was then taken on behalf of the
plaintiff to the General Term of the Supreme Court, where
the judgment was affirmed, and a further appeal was then
taken to this court, where the judgment was finally affirmed.
(*Alvord* v. *Syracuse Savings Bank,* 98 N. Y. 599.)

Thereafter this action was commenced against the town to recover on the four notes made on behalf of the town by its supervisor, as above stated, and to recover the money loaned to the town thereon. The action was put at issue and brought to trial before a judge without a jury, who ordered judgment in favor of the plaintiff.

*Louis Marshall* for appellant. The findings of the court excepted to are entirely unsupported by the proof, and a legal error was, therefore, committed. (Code Civ. Pro. § 993.) The resolutions under which the notes in suit purport to have been issued, and by virtue of which the money raised thereon is claimed to have been borrowed and expended, are void, being violative of section 11 of article 8 of the state Constitution. (*Conro* v. *P. H. I. Co.*, 12 Barb. 27; *McCullough* v. *Moss*, 5 Den. 567, 575, 577; *Warrin* v. *Baldwin*, 105 N. Y. 534; *Starin* v. *Edson*, 112 id. 206; Laws of 1872, chap. 161; Code Civ. Pro. § 1925; *Alvord* v. *S. S. Bank*, 34 Hun, 143; *Parkersburg* v. *Brown*, 106 U. S. 487; *Kelly* v. *Pittsburg*, 104 id. 81; *Loan Assn.* v. *Topeka*, 20 Wall. 655; *McMillen* v. *Anderson*, 95 U. S. 37; *Weismer* v. *Village of Douglass*, 64 N. Y. 91; *Allen* v. *Inhabitants of Jay*, 60 Me. 194; *B. B. Co.* v. *Brewer*, 62 id. 62; *People* v. *Lawrence*, 6 Hill, 214; *Hodges* v. *City of Buffalo*, 2 Den. 110; *Halstead* v. *Mayor, etc.*, 3 N. Y. 430; *Board of Super.* v. *Ellis*, 59 id. 620; *Cornell* v. *Town of Guilford*, 1 Den. 510; *People* v. *Jackson*, 85 N. Y. 544; *People* v. *Stout*, 23 Barb. 354; *People* v. *Haws*, 12 Abb. Pr. 192; *Stetson* v. *Kempton*, 13 Mass. 271; *Minot* v. *West Roxbury*, 112 id. 1; *Coolidge* v. *Brookline*, 114 id. 592; *Frost* v. *Belmont*, 6 Allen, 152; *Parsons* v. *Goshen*, 11 Pick. 396; *Claflin* v. *Hopkinton*, 4 Gray, 502; *Fowler* v. *Danvers*, 134 Mass. 80; *Matthews* v. *Westborough*, Id. 155; *Greenough* v. *Wakefield*, 127 id. 275; *Hanger* v. *City of Des Moines*, 52 Ia. 193; 35 id. 266; *Comrs.* v. *Bradford*, 72 Ind. 455; *Murphy* v. *City of Jacksonville*, 18 Fla. 318; *Mead* v. *Acton*, 139 Mass. 341, 344; *Atty.-Genl.* v. *Mayor, etc.*, 2 Myl. & Cr. 406; *Queen* v. *Mayor, etc.*, L. R. [6 Q. B.] 652;

*State* v. *Tappan*, 29 Wis. 664.)   Assuming that the resolutions are not within the inhibition of the Constitution they are nevertheless violative of the statutory provisions regulating the liability of towns, and create no charge against the defendant. (*Cornell* v. *Town of Guilford*, 1 Den. 510 ; *Palmer* v. *P. R. Co.*, 11 N. Y. 476 ; 1 R. S. 337, §§ 1, 2 ; Id. 340, § 5 ; Id. 356, § 1 ; Id. 349, § 2 ; 2 id. 473, § 92 ; *People ex rel.* v. *Town Auditors*, 74 N.Y. 310 ; *Town of Lyons* v. *Cole*, 3 T. & C. 431; *Denton* v. *Jackson*, 2 Johns. Ch. 336.)   There can be no recovery in this action upon the promissory notes executed by Alvord, as supervisor, or even for money had and received, since the resolutions, under which they purport to have been executed, provided that the town should borrow money upon its credit for the prosecution of the action, and no statutory authority exists which empowers the town to pledge its credit by means of a promissory note.   (*Ketchum* v. *City of Buffalo*, 14 N. Y. 356 ; Burroughs on Public Sec. 177 ; Dillon on Municipal Bonds, 12, 13, 14 ; 2 Daniels on Neg. Ins. § 1528 ; Jones on R. R. Sec. § 283 ; *Town of Hackettstown* v. *Swackhamer*, 37 N. J. L. 192 ; *Knapp* v. *Mayor, etc.*, 39 id. 394 ; *Mayor, etc.*, v. *Ray*, 19 Wall. 475, 481 ; *Atty.-Gen.* v. *Corporation of Lichfied*, 13 Simon, 547; *Parker* v. *Bd. of Supervisors*, 106 N. Y. 410, 411 ; *Starin* v. *Genoa*, 23 id. 449 ; 1 R. S. 355, § 49 ; *Warrin* v. *Baldwin*, 105 N. Y. 534 ; *Osterhoudt* v. *Rigney*, 98 id. 422 ; *Peo. ex rel.* v. *City of Elmira*, 82 id. 80.)   The resolution adopted by the town meeting of 1882, afforded the supervisor no authority for executing any of the notes in suit and cannot be made the basis of liability, because no action was taken thereunder, as required by its terms.   (*Shepherd* v. *Mayor, etc.*, 96 N. Y. 137.)   Plaintiff can recover in this action, if at all, only upon the notes in suit.   (*Preston* v. *Yates*, 24 Hun, 534.)

*William G. Tracy* for respondent.   Most of the findings of fact excepted to are immaterial, and the judgment should not be reversed for any error in detail therein.   (*Caswell* v. *Davis*, 58 N. Y. 223.)   The action commenced by Alvord and

Pitcher against the railroad commissioners of the town and the holders of the bonds, was properly brought and finally settled the controversy in respect to the validity of the bonds of the defendants. (Laws of 1872, chap. 161; Code Civ. Pro. § 1925; *Ayers* v. *Lawrence*, 59 N. Y. 192; *Metzger* v. *A. & A. R. R. Co.*, 79 id. 171; *Latham* v. *Richard*, 12 Hun, 360; *Hillis* v. *P. S. Bank*, 26 id. 161; *Alvord* v. *S. S. Bank*, 98 N. Y. 599; *Hurlbert* v. *Bank*, 1 Abb. [N. C.] 157, 161.) The corporate property of the town of Salina was involved in the action brought by Alvord and Pitcher, and the action was assumed and prosecuted by the town to protect such property. (*Ayers* v. *Lawrence*, 59 N. Y. 198; Code, § 1925.) Whenever a controversy arises between a town and other persons or corporations, the town may assume the prosecution or defense of a suit which will ascertain the legal rights of the town concerning the matter in controversy. (R. S. [7th ed.] 840, § 4; *Halstead* v. *Mayor, etc.*, 5 Barb. 218, 222; *Cornell* v. *Town of Guilford*, 1 Den. 510; *People* v. *Town Auditors*, 74 N. Y. 310; 10 Hun, 551.) The right of plaintiff to recover is not barred because no appeal was taken by plaintiffs Alvord and Pitcher in their action, from the judgment dismissing the complaint as to the railroad commissioner, nor by section 21 of article 8 of the Constitution. (34 Hun, 143; 98 N. Y. 599.) The moneys represented by the notes in question are town charges, because authorized to be raised by the vote of the town meeting for a town purpose. (R. S. [7th ed.] 842, title 6, § 2, subd. 3; *Horn* v. *Town of New Lots*, 83 N. Y. 100; *Morey* v. *Town of Newfane*, 8 Barb. 645; *People ex rel.* v. *Town of Hempstead*, 4 Hun, 94.) Francis Alvord was duly appointed the agent of defendant, and not having exceeded his authority the defendant is bound by his acts. (*Cushing* v. *Stoughton*, 6 Cush. 389.) This action can be sustained upon the notes or upon the original consideration of the notes. (*Geriwig* v. *Sitterly*, 56 N. Y. 214; *Pilcher* v. *Brayton*, 17 Hun, 429; *Bolen* v. *Crosby*, 49 N. Y. 183; *O. Bank* v. *O. Bank*, 21 id. 490.)

EARL, J. The action commenced by Alvord and Pitcher, if successful, would necessarily have inured to the benefit of the town and all its taxpayers, and we will, therefore, assume that the electors of the town at the town meetings in 1881 and 1882 had the power to direct the supervisor, with the consent of the plaintiffs in that action, to assume the control, direction and prosecution thereof on behalf of the town, and that that action may, therefore, be treated as if it had been actually commenced in the name of the town or its supervisor. We will also assume that the electors at the town meetings had the power to direct money to be raised for prosecuting that action, and, furthermore, that the $4,000 was borrowed to defray the expenses of that action, and was actually used for that purpose; and yet we are constrained to hold that this action cannot be maintained.

Business corporations, unless restrained by their charters, possess the power to borrow money and issue securities therefor. Generally they could not carry on their authorized and legitimate business without such a power, and, hence, it must be presumed that the legislature intended that they should possess it. But towns and other municipal corporations are organized for governmental purposes, and their powers are limited and defined by the statutes under which they are constituted. They possess only such powers as are expressly conferred or necessarily implied. They are clothed with the power of taxation, and can thus raise all the money needed for ordinary municipal purposes, and until the money can thus be raised, as it can be at brief intervals, experience has demonstrated their ability to obtain upon credit all the materials and services needed without a resort to loans of money upon credit. It is the general, if not the universal, law of this country, and of England, that municipalities are not empowered to borrow money for municipal purposes, unless expressly authorized to do so by statute, or in the absence of a statute, unless the power is necessarily implied from some special duty imposed, for the discharge of which the power to borrow is not only convenient, but necessary.

We do not find in the statutes of this state that the power to borrow money has been expressly conferred upon towns, or is necessarily implied. This, we think, will clearly appear from a brief examination of the statutes. It is provided in part 1, chapter 11, title 1, article 1 of the Revised Statutes, that "no town shall possess or exercise any corporate powers, except such as are enumerated in this chapter, or shall be especially given by law, or shall be necessary to the exercise of the powers so enumerated or given." Among the powers enumerated are the following: "To make such contracts, and to purchase and hold such personal property, as may be necessary to the exercise of its corporate or administrative powers." This provision clearly does not authorize the borrowing of money upon the credit of the town, unless it can be shown that such borrowing is necessary "to the exercise of its corporate or administrative powers." In title 2, article 1 of the same chapter, it is provided that the electors of a town at the annual town meeting shall have power "to direct the institution or defense of suits at law or in equity, in all controversies between such town and corporations, individuals or other towns;" and "to direct such sum to be raised in such town for prosecuting or defending such suits, as they may deem necessary." What is here meant by the word "raised?" It certainly does not mean "borrowed," and evidently means raised by taxation. In the same article it is provided that electors at a town meeting shall have power "to direct such sum to be raised in such town for the support of common schools for the then ensuing year, as they may deem necessary, to make such provisions and allow such rewards for the destruction of noxious weeds as they may deem necessary, and to raise money therefor, to direct such sum to be raised in such town for the support of the poor for the ensuing year as they may deem necessary, and every town may raise any money that may be necessary to defray any charges that may exist against the overseers of the poor of such town;" and special town meetings may be "called for the purpose of raising money for the support of common schools, or of the poor, to vote on the, question of raising money for the construc-

tion and maintenance of any bridge or bridges," and "for the purpose of deliberating in regard to the institution or defense of suits, or the raising of moneys therefor." In part 1, chapter 16, title 1, article 1, of the Revised Statutes, it is provided that "the commissioners of highways of each town shall deliver to the supervisor of such town, a statement of the improvements necessary to be made on the roads and bridges, together with the probable expense thereof, which supervisor shall lay the same before the board of supervisors at their next meeting. The board of supervisors shall cause the amount so estimated to be assessed, levied and collected in such town in the same manner as other town charges; but the moneys to be raised in any such town shall not exceed in any year the sum of $250;" and in chapter 274 of the Laws of 1832, section 1, it is provided that "whenever the commissioners of highways of any town in the state shall be of opinion that the sum of $250, as now allowed by law, will be insufficient to pay the expenses actually necessary for the improvement of roads and bridges, it shall be lawful for such commissioners to apply in open town meeting for a vote authorizing such additional sum to be raised, as they may deem necessary for the purpose aforesaid, not exceeding $250, in addition to the sum now allowed by law;" and section 5 provides that "if any town shall at an annual meeting have already voted to raise a sum exceeding $250, for the purposes aforesaid, it shall be the duty of the board of supervisors of the county in which such town is situated to assess, levy and collect the sum so voted to be raised upon said town." In chapter 305 of the Laws· of 1840, the boards of supervisors are authorized and directed to cause "to be levied and raised" the amounts audited and allowed by boards of town auditors. In chapter 197 of the Laws of 1847, it is provided that, "the board of supervisors in any county may, in their discretion, cause any money, or any portion thereof, voted by towns, before the passage of this act, for building town-houses, to be raised in said towns for such purpose." In chapter 513 of the Laws of 1872, chapter 410 of the Laws of 1874, chapter

554 of the Laws of 1880, and in numerous other statutes, the word " raise " or " raised " is used in the same sense; and so far as we can discover it is never used in the sense of " borrow " or " borrowed." The power to raise money for municipal purposes, it is believed, never means a power to borrow unless there is other language qualifying or extending its meaning. (*Stetson* v. *Kempton,* 13 Mass. 272; *Frost* v. *Inhabitants of Belmont,* 6 Allen, 152; *Claflin* v. *Inhabitants of Hopkinton,* 4 Gray, 502; *Minot* v. *Inhabitants of West Roxbury,* 112 Mass. 1; *Mead* v. *Acton,* 139 id. 341.)

There was not only no express authority conferred upon the town to borrow this money, but it did not possess the power by necessary implication. The credit of the town would have been sufficient for the prosecution of the taxpayers' action, until money could be raised to meet the expenses by the ordinary mode of taxation.

We have assumed that the maintenance of that action was a town purpose, and that the expense thereof was a town charge; but the expense was to be met like all other town charges. Towns have no power to borrow money simply because it is useful and intended to pay a town charge. The expenses of the town poor and of town bridges and of town officers are all town charges, and yet no one would contend that the town could borrow money to meet these charges instead of meeting them in the mode prescribed by statute, by taxation. In part 1, chapter 11, title 6 of the Revised Statutes, it is provided that " the moneys necessary to defray the town charges of each town shall be levied on the taxable property in the town in the manner prescribed in this act."

It is the policy of the laws that town charges shall be met by annual recurring taxation, and thus extravagance and improvidence are in some degree checked, as those who create town charges or are the taxpayers when they arise, must bear the burden of taxation to meet them. It is quite easy for the taxpayers of to-day to create a debt which they are not to feel and which the taxpayers of the future are to discharge. The system of laws relating to towns requires that all bills for

moneys expended or materials furnished, or services rendered to the town shall be verified and presented to the board of town auditors and audited by them, and then enforced by warrants of the board of supervisors against the taxpayers of the town. This whole system would be subverted if towns could borrow money upon credit to meet town charges. Then the money would have to be repaid whether the town had had the benefit thereof or not, and the wise provisions of the statutes to secure economy and safety by the audit of accounts would be entirely frustrated.

The danger of allowing money to be borrowed on the credit of the town for such a town purpose as we have here, is quite clearly illustrated in this case. Here the sum of $8,400 was authorized to be borrowed to carry on an ordinary litigation, and $1,500 was paid to the attorney long before the trial of the action, and thereafter $3,000 more was paid to him for his services and expenses, and there remains still a balance due. The bills for services and expenses have never been audited or allowed in the mode prescribed by the statutes. There was no proof upon the trial that the money borrowed was actually needed for the prosecution of that action, or that it was prudently, honestly or wisely used. But even if we should assume that it had been sufficiently established that the town had the full benefit of the money thus borrowed, that would not authorize the maintenance of this action. If a town could be made liable for money borrowed simply because it had been applied for town purposes, then the entire system for the audit and allowance of town charges would be overturned. Even if the plaintiff's testator by the payment of the expenses of that litigation became the equitable assignee of the bills representing such expenses, and might have taken and presented those bills for audit to the board of town auditors, yet he never did so. He did not bring his action upon the theory that he was an equitable assignee of those bills, and he gave no proof which entitled him to recover as an equitable assignee, and the case was not tried upon that theory. Our conclusion, therefore, is that upon the facts as they appear in this

record the complaint should have been dismissed; and for this conclusion there is abundance of authority.

In *Hanger* v. *City of Des Moines* (52 Iowa, 193), it was said: "It is well settled that a municipal corporation can exercise only such powers as are expressly granted by statute, and such as are necessarily and fairly implied in, or incident to, those conferred by express grant, and 'those essential to the declared object and purpose of the corporation.'" And to the same effect are the following authorities: *Minot* v. *Inhabitants of West Roxbury* (*supra*); *Anthony* v. *Adams* (1 Met. 284); *Parsons* v. *Inhabitants of Goshen* (11 Pick. 396); *Lemnon* v. *City of Newton* (134 Mass. 476); *Cornell* v. *Town of Guilford* (1 Denio, 510); *Board of Supervisors* v. *Ellis*, (59 N. Y. 620).

In *Town of Hackettstown* v. *Swackhamer* (37 N. J. L. 191), it was held that municipal corporations, in the absence of a specific grant of power, do not in general possess the capacity to borrow money, and that a note given for an unauthorized loan cannot be enforced, although the money borrowed has been expended for municipal purposes. BEASLEY, Ch. J., writing the opinion, said: "I am at a loss to perceive how it can be inferred that a power to borrow money is an appendage to the usual franchises given to municipal corporations. Such a right cannot, in any reasonable sense, be said to be necessary within the meaning of that term as already defined. Under ordinary circumstances it is not certainly indispensable, as common experience demonstrates. In the great majority of instances the municipal affairs are, with ease and completeness, transacted without it.     *     *     *     My remarks are to be restricted to that class of cases where charters are granted containing nothing more than the usual franchises incident to municipal corporations, and under such conditions it seems clear to me that the power to borrow money is not to be deduced. I have already said that it does not appear to be a necessary incident to the powers granted, for such powers can be readily and efficiently executed in its absence. It would be to fly in the face of all experience to claim that the ordinary

municipal operations cannot be efficiently carried on, except with the assistance of borrowed capital. Without any help of this kind, it is well known that our towns and cities have long been, and are now being, improved and governed. For the attainment of these ends it has not generally been found necessary to resort to loans of money. The supplies derived annually from taxation have been found amply sufficient for these purposes; consequently I am unable to perceive any necessity to borrow money under these conditions, from which the gift of such power to borrow is to be implied. It undoubtedly is clear that if, as has been asserted, the ends of the municipal charter can be conveniently reached, without a resort to the device of raising moneys by loan, there is not the least legal basis for a claim of the power to obtain funds in that way. Granted the fact that the charter can be executed with reasonable ease and with completeness, the conclusion is inevitable that the power in question cannot be called into existence by intendment, and as I claim the fact to exist I must, of necessity, reject the right of implication in question."

In *Ketchum* v. *City of Buffalo* (14 N. Y. 366), SELDEN, J., writing the opinion of the court said : " It is true the power to contract to pay A. $10,000 at the end of the year for doing certain work, and the power to borrow $10,000 of B. upon a credit of a year for the purpose of paying A. for doing the work might seem at first view to be substantially identical. The amount is the same and the time of payment the same; the credit only is different. A little examination, however, will show that there is a very material difference between the two. If the power of the corporation to use its credit is limited to contracting directly for the accomplishment of the object authorized by law, then the avails or consideration of the debt created cannot be diverted to any illegitimate purpose. The contract not only creates the fund, but secures its just appropriation. On the contrary, if the money may be borrowed the corporation will be liable to repay it, although not a cent may ever be applied to the object for which it was avowedly obtained. It may be borrowed to build a market

and appropriated to build a theatre, and yet the corporation would be responsible for the debt. The lender is in no way accountable for the use made of the money. It is plain, therefore, that if the policy of limiting the powers and expenditures of corporations to the objects contemplated by their charters is to be carried out, their right to incur debts for those objects must be strictly confined to contracts which tend to their direct accomplishment. * * * No one can fail to see that to concede to corporations the power to borrow money for any purpose, would be entirely subversive of the principle which would limit their operations to legitimate objects."

In *Starin* v. *Town of Genoa* (23 N. Y. 439), LOTT, J., writing the opinion said: "The towns of this state have not the general power to borrow money, nor are their officers, in the exercise of their ordinary duties, authorized to issue bonds or any other evidence of indebtedness in the name of the towns represented by them for loans or other debts contracted or incurred on their behalf."

In *Parker* v. *Board of Supervisors of Saratoga Co.* (106 N. Y. 392), ANDREWS, J., said: "The contention that boards of supervisors have no inherent power to borrow money or to issue negotiable paper, accords with the general understanding and with the tenor of the adjudged cases, and the course of legislation, which presupposes the necessity of express legislative sanction in order to justify the exercise of this authority. In this state the powers of boards of supervisors are not only the subject of express affirmative definition, but for the purpose of confining the action of these bodies to the exercise of enumerated powers, it is declared that 'no county shall possess or exercise any corporate powers, except such as are enumerated or shall be specially given by law, or shall be necessary to the exercise of the powers so enumerated or given.' The power of borrowing money is incident to the powers of a business corporation, unless excluded by its charter. Boards of supervisors have the recourse of taxation for the raising of money for county purposes. The power to borrow money is not necessary to the execution of powers

expressly given. But the denial of this power to those *quasi* public corporations also stands strongly upon considerations of public policy, and the doctrine that they have no implied power to borrow money is an important safeguard to the pro- tection of political communities against the creation of ruinous liabilities through the action of incapable, negligent or unfaithful public agents. We concur, therefore, with the proposition that the power of the board of supervisors to extend the original debt by means of new loans, or by renewals of prior obligations, if it existed, must be found in the statute, given either expressly or by implication."

In *Mayor, etc.*, v. *Ray* (19 Wall. 468), Mr. Justice BRADLEY wrote an opinion, in which Justices MILLER, DAVIS and FIELD concurred, in which he said: " A municipal corporation is a subordinate branch of the domestic government of a state. It is instituted for public purposes only, and has none of the peculiar qualities and characteristics of a trading corporation instituted for purposes of private gain, except that of acting in a corporate capacity. Its objects, its responsibilities and its powers are different. As a local governmental institution it exists for the benefit of the people within its corporate limits. The legislature invests it with such powers as it deems ade- quate to the ends to be accomplished. The power of taxation is usually conferred for the purpose of enabling it to raise the necessary funds to carry on the city government, and to make such public improvements as it is authorized to make. As this is a power which immediately affects the entire constitu- ency of the municipal body which exercises it, no evil conse- quences are likely to ensue from its being conferred, although it is not unusual to affix limits to its exercise for any single year. The power to borrow money is different. When this is exercised the citizens are immediately affected only by the benefit arising from the loan; its burden is not felt until afterwards. Such a power does not belong to a municipal corporation as an incident to its creation. To be possessed it must be conferred by legislation, either express or implied. It does not belong, as a mere matter of course, to local govern-

ments to raise loans. Such governments are not created for any such purpose. Their powers are prescribed by their charters, and those charters provide the means for exercising the powers, and the creation of specific means excludes others. Indebtedness may be incurred to a limited extent in carrying out the objects of the corporation. Evidence of such indebtedness may be given to the public creditors. But they must look to and rely on the legitimate mode of raising the funds for its payment. That mode is taxation. Our system of local and municipal government is copied, in its general features, from that of England. No evidence is adduced to show that the practice of borrowing money has been used by the cities and towns of that country without an act of parliament authoring it. We believe no such practice has ever obtained. * * * If, in the exercise of their important trusts, the power to borrow money and to issue bonds, or other commercial securities, is needed, the legislature can easily confer it under the proper limitations and restraints, and with proper provisions for future payment. Without such authority it cannot be legally exercised."

In *Attorney-General* v. *Corporation of Lichfield* (36 Eng. Ch. R. 546) the case was one where £200 pounds were borrowed of one Mallett and used for the ordinary expenses of the corporation; and it was held that the corporation had no authority to borrow money, and its treasurer was restrained from paying out of the funds of the corporation the money thus borrowed. To the same effect are the following textbooks: Dillon on Municipal Bonds, pp. 13, 14; Burroughs on Public Securities, § 177; Jones on Railroad Securities, §§ 222, 283; Daniels on Negotiable Instruments, § 1530. In the latter authority the learned author says: "But there is a fundamental difference between contracting a debt to one person and borrowing money from another to pay it. It may be convenient to do so, but it cannot be necessary, and the power to contract a debt to A. cannot, by any reasonable intendment, be construed into a power to borrow money from B. In the one case the application of the credit is secured to

the advancement of the authorized object, while money borrowed is liable to be lost, to be squandered, or to be diverted to illegitimate purposes."

In *McDonald* v. *Mayor, etc.* (68 N. Y. 23), it was held that where a municipal charter prohibits its officers from contracting on its behalf for the purchase of materials, save in cases and in a manner specified, the municipality is neither liable upon a contract made by an official in violation of, or without a compliance with the requirements of the charter, nor can the value of materials furnished under the contract be recovered upon any implied liability. In that case Judge FOLGER said : " It may be that where a municipality has come into the possession of the money or the property of a person without his voluntary, intentional action concurring therein, the law will fix a liability and imply a promise to repay or return it." In *Dickinson* v. *City of Poughkeepsie* (75 N. Y. 65), it was held that a contract for the supply of water in the city of Poughkeepsie was unauthorized and void, and that being void when executed, its execution did not confer upon the contractor any right of action thereunder, and that no recovery thereon could be had upon a *quantum meruit.* Judge HAND there said: " If the execution of a contract, the making of which is prohibited as against public policy, absolutely cures its invalidity, a mere continuance in violation of law would have certainly a strange result. It is difficult to see what use or force there could be in such prohibitions, so general as to municipalities and so much a part of our policy in this state, if the consummation of their violation brings with it the protection of the law and a right of action for payment upon the void contract."

The money for which the plaintiff here seeks to recover was not taken from his testator against his will. On the contrary, his testator delivered it to Alvord, knowing, as we must assume, that he had no right to borrow it on behalf of the town, and that he had no agency on its behalf in reference thereto. This is not, therefore, like a case where the money or property of one is taken against his will without authority

of law or in violation of law ar d applied to the use or benefit of a municipality.

We have regarded this as a case of great public importance, and we have, therefore, given it very careful consideration. The extended citations from authorities of acknowledged weight, and from the opinions of judges of great repute, furnish ample reasons for the conclusion we have reached. There is no possible ground which we can perceive for the maintenance of this action, and it is better that the litigation should end here.

The judgment of the General Term and that entered at the Trial Term should, therefore, be reversed and the complaint dismissed, with costs.

All concur, except RUGER, Ch. J., and ANDREWS, J., taking no part.

Judgment accordingly.