sion with another, fraudulently obtained the mortgage, would it not have been entirely proper in an action for an accounting, wherein the subject of the giving and of the validity of the mortgage would be involved, to vouch in the mortgagee in the accounting action, to the end that the plaintiff might obtain complete relief? The distinctions between actions at law and suits in equity have so frequently been pointed out that it is unnecessary to restate them beyond saying that in the latter, particularly where questions of trust or fiduciary relations are involved, and where an accounting is asked for, it is competent to bring in all those who may be interested in the judgment, or whose presence in the suit is necessary for the relief sought.

Having reached the conclusion that there is but one cause of action stated, and that for an accounting, it follows that the demurrer, which is based upon the theory that there are two or more causes of action stated, is bad; and the interlocutory judgment should, accordingly, be reversed, with costs, and the demurrer overruled, with costs, but with leave to the defendant to answer over on payment of costs in this court and the court below. All concur.

---

## JAMAICA SAV. BANK v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.    May 31, 1901.)

1. MUNICIPAL CORPORATIONS—TOWNS—PURCHASE OF LANDS—BONDS—PART OF ISSUES.

Laws 1864, c. 147, §§ 1, 2, authorized the town of J. to borrow money for the purchase of a site and the erection of a town hall. Laws 1894, c. 146, amending the former act, authorized the town to purchase land adjacent to the town hall, the expense to be levied and paid as other town charges, but did not expressly authorize it to borrow money. Laws 1892, c. 686, § 12, subd. 6, empowered the board of supervisors to authorize any town in their county to borrow money for town uses, and to issue its obligations therefor, when and in the manner authorized by law. Held, that the latter act, coupled with the permission of the board of supervisors, authorized the town to issue bonds for the purchase of land adjacent to its town hall.

2. SAME—AUTHORITY OF SUPERVISORS.

Laws 1892, c. 686, § 12, subd. 6, empowering the board of supervisors to authorize any town in their county to borrow money for town uses, and to issue its obligations therefor, is not limited to the purposes expressed in County Law, § 69, authorizing the board to authorize a town to issue bonds for highway and bridge purposes.

Goodrich, P. J., dissenting.

Appeal from trial term, Queens county.

Action by the Jamaica Savings Bank against the city of New York to enforce bonds issued by the town of Jamaica and assumed by the defendant. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

William J. Carr, for appellant
Henry A. Monfort, for respondent.

HIRSCHBERG, J.   On March 18, 1895, the plaintiff loaned the town of Jamaica, in Queens county, $20,000, and received 20 bonds, executed by the proper officers of the town, each for the sum of $1,000. The town debt, if lawful, was assumed by the defendant, in accordance with the provisions of the Greater New York charter (chapter 378 of the Laws of 1897).   Interest on the bonds amounting to the sum of $1,200 remains due and unpaid, and this action is brought to recover it.   The defense, as presented on this appeal, is limited to the assertion that the town had no authority to borrow the money on its obligations.   The money was borrowed for the purpose of paying for lands adjacent to the site of the Jamaica town hall, in the village of Jamaica.   The acquisition of the original land and the building of the town hall were in pursuance of chapter 147 of the Laws of 1864, entitled "An act to provide for the erection of a town hall in the town of Jamaica, in the county of Queens."   By section 1 of that act the supervisor and four other individuals, named as commissioners to act in conjunction with him, were authorized to borrow, on the faith and credit of the town, a sum not exceeding $30,000.   By section 2 the supervisor and commissioners were directed to purchase a site in the village of Jamaica for a town hall, and to erect such hall with the money so borrowed.   Section 3 provided that:

"The board of town officers of the town of Jamaica, shall appoint three trustees to have the care and custody of said town hall so erected; but the title to the same and to the site thereof, shall be deemed to be vested in the said town of Jamaica.   The said trustees may rent the same when not required for town purposes, and may collect and receive the rent therefor. The rents so received by them shall be applied by them to defray the expense of keeping said hall in repair and taking care of the same.   Any excess of said rents over and above said expenses, shall be paid by said trustees to the overseers of the poor of said town for the support of the poor."      ○

By chapter 146 of the Laws of 1894, section 3 was amended so as to read as follows:

"The town board of the town of Jamaica shall have the care and custody of the said town hall. and all such adjacent lands as may be acquired by the said town board for public uses and purposes, and shall establish such rules and regulations for the government of the same as they deem proper. The title to said town hall and the site thereof, and of such adjacent lands, shall be deemed to be invested in the said town of Jamaica; and the said town board is hereby expressly vested with power to make or cause to be made all repairs and alterations in said town hall, and to acquire, take and hold, in the name of the town and for the benefit of the town, by purchase or condemnation, such adjacent lands for public uses and purposes as the said board may deem necessary or proper, and the expense thereof shall be deemed a town charge, and shall be levied and collected the same as other town charges."

The plaintiff's bonds were issued to borrow money for the acquisition of adjacent lands pursuant to section 3 as thus amended, and the issue of the bonds was authorized by an act duly passed by the board of supervisors of Queens county March 7, 1895.   It is seriously contended, however, by the defendant, that inasmuch as legislative authority to borrow money upon the obligations of the town was conferred by the act of 1864 in respect to the acquisition of the original site, and no such authority is conferred with respect to the purchase

of adjacent lands under the amendment of 1894, the legislative intent was that the price of the adjacent lands could not be borrowed by bonding, but must be levied and collected the same as other town charges in the tax levy of the year during which the adjacent lands were purchased or acquired by condemnation. I cannot take this narrow view. Between the passage of the act of 1864 and the amendment of 1894, the legislature, by chapter 482 of the Laws of 1875, had conferred upon the boards of supervisors in the several counties of the state further powers of local legislation, which included, by the terms of sections 20 and 28, the power to authorize any town to issue its bonds, and borrow money thereon for the acquisition of a site and the erection of a town hall, upon the vote of a majority of the tax-paying electors. During the same period the legislature further enlarged the powers of the boards of supervisors by subdivision 6 of section 12 of the county law (chapter 686 of the Laws of 1892), by empowering them generally to "authorize a town in their county to borrow money for town uses and purposes on its credit, and issue its obligations therefor, when, and in the manner, authorized by law." That the acquisition of the adjacent lands in this case was a lawful town use and purpose, and that the act of 1894 was constitutional, was held by Mr. Justice Willard Bartlett, on the condemnation proceedings, in a very satisfactory opinion delivered at the special term, and embraced in the present record. 70 N. Y. Supp. 837. It would therefore seem that ample authority existed for the issue of the bonds in question, unless the board of supervisors had no authority to permit such issue by virtue of the sanction contained in the law of 1892, or because of some qualification of the power to be found in the act authorizing the acquisition of the town site and hall and the amendment thereto.

It appears from the brief of the learned counsel for the appellant that the attitude of resistance to the payment of these bonds has been assumed by the defendant "on the report of three eminent lawyers appointed by it to examine into the validity of all bonds outstanding against the various municipalities which were consolidated into it by the Greater New York charter." The report is printed as an appendix to the brief. The point upon which the "three eminent lawyers" condemn the bonds is, in substance, that the provision of the county law, supra, by which boards of supervisors are authorized to permit towns to borrow money and issue obligations for town uses and purposes, is intended to apply only to such cases as are provided for by section 69 of the county law, viz. for expenditures for highways and bridges. No authority is cited in support of this contention, and no support for it can be found in the law. The general provision by which the power is conferred upon the boards of supervisors in subdivision 6 of section 12, supra, relates, in terms, to the "general powers" of the boards of supervisors, and may be regarded as a broad and comprehensive re-enactment of section 28 of chapter 482 of the Laws of 1875, which, by distinct reference to other sections of the act, included bonding for money to be used in acquiring town halls as well as for bridges and highways. See sections 6 and 20 of that act. The language employed is broad enough to cover all "town uses and pur-

poses." Section 69 of the county law, however, is a part of article 4, which relates only to the "duties of boards of supervisors relating to highways and bridges." It expressly empowers boards of supervisors to authorize towns to issue bonds for the construction and improvement of roads and bridges. There is no rule of statutory construction which makes a part include the whole. If section 69 contains the entire scope of the power of supervisors on the subject, the provision contained in section 12 is both unnecessary and meaningless. The theory of the "three eminent lawyers" must therefore be rejected.

The learned counsel for the appellant insists, however, that the absence of express legislative authority to borrow the money by bonding for the adjacent lands is significant of an intention to prohibit it, that the provision to the effect that the expense shall be levied and collected the same as other town charges is an indication that the money must be raised by a single tax levy, and that the provision of the county law by which the board of supervisors is only permitted to authorize bonding "when, and in the manner, authorized by law," is an express limitation of such authority to the cases where it is conferred by some other legislative act. There is no special significance to be attached to the absence of a provision for bonding in the amendatory act, in view of the fact that full power had been conferred upon the supervisors to authorize the raising of the money by the issue of bonds intermediate the date of the original act and of the amendment. The provision that the expense shall be deemed a town charge, to be levied and collected the same as other town charges, relates equally to the "repairs and alterations" to the town hall as to the cost of acquiring adjacent lands. There is nothing in this provision which necessarily negatives the general power delegated to the board of supervisors to legalize a bond issue; for the bonds must be met and redeemed, both principal and interest, by annual tax levies, the same as other town charges. Indeed, section 180 of the town law (chapter 569, Laws 1890) provides that "every sum directed by law to be raised for any town purpose" shall be deemed one of the town charges, and that "the moneys necessary to defray such charges shall be levied on the taxable property in such town by the board of supervisors." The restrictions contained in the general power conferred upon boards of supervisors to authorize a town to borrow money, and issue its obligations therefor, "when, and in the manner, authorized by law," cannot be designed as a limitation of the power to the cases where it is specially conferred upon such town by some other general or local statute; for in such case it would be entirely unnecessary. If the board of supervisors could only authorize a town to borrow money when the legislature had already done so, the power of the local legislature would exist only in name. The limitation, "when, and in the manner, authorized by law," may more reasonably be assumed to relate to any special restrictions which may be contained in the local act, to the limitation of credit and other particulars as set forth in sections 13 and 14 of the county law, and to the general provisions relating to municipal bonds embraced in the general municipal law (chapter 685, Laws 1892), which provides in great detail for the

form, amount, duration, and manner of the creation of such obligations, and includes, by the express terms of section 1, both a town, and the town board of a town, within the scope of its provisions. The purpose of the legislature in the Jamaica acts, when viewed in the light of the general laws herein referred to, was to include both the original site and building and the subsequently acquired adjacent lands, as the proper subject of a reasonable and lawful town credit, —the first by a loan directly authorized, and the latter within the purview of the power of the supervisors. Thirty thousand dollars only was allowed for the original acquisition, while no limitation was placed upon the sum to be expended for the adjacent lands. It appears that the sum of $40,000 was actually expended in procuring the adjacent lands, and no good reason appears for the saddling of that large outlay upon the taxpayers in a single year. Such a purpose would require plain expression, to give it force and validity; and the mere statement that the repayment of the money was to be a town charge, to be levied and collected as other town charges, is not in itself sufficient to repeal a general law which remits to the local legislature the determination of the question whether its payment should be distributed over a reasonable period of years in the manner generally provided by law for the creation and the funding of municipal indebtedness. The judgment should be affirmed.

Judgment affirmed, with costs. All concur, except GOODRICH, P. J., who dissents.

GOODRICH, P. J. (dissenting). I do not agree with the conclusions of my associates, as expressed in the opinion of Mr. Justice HIRSCHBERG. The plaintiff sued to recover the amount of interest coupons upon bonds of the town of Jamaica issued in March, 1895. The bonds were part of an amount of $40,000 in bonds issued to defray the expense incurred by the town in acquiring certain lands adjacent to the town hall. The question presented for decision is whether the town had power to issue the bonds. It does not require a consideration of the ultimate liability of the town for the amount expended in the acquisition of the lands. In 1864 the legislature passed "An act to provide for the erection of a town hall in the town of Jamaica, in the county of Queens." Laws 1864, c. 147. The first section authorized the supervisors, in conjunction with the three commissioners named in the act, to "borrow on the faith and credit" of the town, for the purpose of the act, the sum of $30,000, and to execute bonds therefor, payable in 12 annual installments, consecutively. The second section provided for the purchase of the site for and erection of the hall. The third section related to the custody of the hall and the title thereto. The sixth section provided for the yearly raising by tax, as other taxes are levied, the sum necessary to pay the annual installments and the interest. In 1894 section 3 was amended so as to authorize the town board to "acquire, take and hold in the name of the town and for the benefit of the town, by purchase or condemnation, such adjacent lands for public uses and purposes as the said board may deem necessary or proper, and the expense thereof shall be deemed a town charge and shall be levied and collected the

same as other town charges." The board of supervisors in 1895, acting under the amended section, passed a resolution authorizing the town to borrow the sum of $40,000 upon its faith and credit, for the purpose of acquiring the adjacent lands, etc., and to issue the bonds in question; and the plaintiff purchased one-half thereof. The city, succeeding under the Greater New York charter to the liabilities of the town, now contends that the town had no power, express or implied, to issue the bonds for the purpose of acquiring the lands in question. The plaintiff contends that the board of supervisors, under the county law (1 Rev. St. [9th Ed.] p. 597), had power to authorize the issue of the bonds, and it is this question alone which is raised by the present appeal.

Among the general powers conferred upon the board of supervisors by section 12, subd. 6, of the county law, is the power "to authorize a town in their county to borrow money for town uses and purposes on its credit and issue its obligations therefor when and in the manner authorized by law." It is well settled that a town possesses only such powers as are expressly conferred by statute or necessarily implied. In Wells v. Town of Salina, 119 N. Y. 280, 23 N. E. 870, 7 L. R. A. 759, —an epitome of the law upon this subject,—the court, after a careful statement of the authorities, said (page 287, 119 N. Y., page 871, 23 N. E., and page 761, 7 L. R. A.):

"Towns and other municipal corporations are organized for governmental purposes, and their powers are limited and defined by the statutes under which they are constituted. They possess only such powers as are expressly conferred or necessarily implied. They are clothed with the power of taxation, and can thus raise all the money needed for ordinary municipal purposes; and until the money can thus be raised, as it can be at brief intervals, experience has demonstrated their ability to obtain upon credit all the materials and services needed, without a resort to loans of money upon credit. It is the general, if not the universal, law of this country and of England that municipalities are not empowered to borrow money for municipal purposes unless expressly authorized to do so by statute, or, in the absence of a statute, unless the power is necessarily implied from some special duty imposed, for the discharge of which the power to borrow is not only convenient, but necessary."

In 2 Rev. St. (8th Ed.) p. 1348, pt. 1, c. 16, tit. 1, art. 1, now repealed by the town law (chapter 569, Laws 1890), the board of supervisors, upon the statement of the highway commissioners that it is necessary to raise moneys for improvements to the highways, was authorized to cause the amount to be "assessed, levied and collected * * * in the same manner as other town charges"; and in the Town of Salina Case the court interpreted the words "assessed, levied and collected," and declared that they, like the word "raised," did not authorize the town to borrow money, instead of raising it by taxes, saying (pages 290, 291, 119 N. Y., page 872, 23 N. E., and page 761, 7 L. R. A.):

"It is the policy of the laws that town charges shall be met by annual recurring taxation, and thus extravagance and improvidence are in some degree checked, as those who create town charges, or are [sic] the taxpayers when they arise, must bear the burden of taxation to meet them. It is quite easy for the taxpayers of to-day to create a debt which they are not to feel, and which the taxpayers of the future are to discharge. The system of laws relating to towns requires that all bills for moneys expended or mate-

rials furnished, or services rendered to the town, shall be verified and presented to the board of town auditors and audited by them, and then enforced by warrants of the board of supervisors against the taxpayers of the town. This whole system would be subverted if towns could borrow money upon credit to meet town charges. Then the money would have to be repaid, whether the town had had the benefit thereof or not, and the wise provisions of the statutes to secure economy and safety by the audit of accounts would be entirely frustrated."

I come then to the question as to what power the board of supervisors has under section 12, subd. 6, of the county law, above quoted. Manifestly, its power to authorize the town to borrow money and issue obligations therefor is by the language limited to doing this "in the manner authorized by law." The manner authorized by law, as to the bonds in question, must be found alone in the amendment of the original act passed in 1894. It is a familiar rule of construction of an amended statute that the amendment and the original must, for purposes subsequent to the amendment, be construed as one statute. They are regarded as constituting but one enactment, so that no portion of either is to be left without effect if it can be made operative without wresting the words used by the legislature from their appropriate meaning. End. Interp. St. § 40. There are two subjects in the amended act; one relating to the town hall, and the other relating to the adjacent lands. The act contains express authority for the issue of bonds to pay for the town hall, but when the adjacent lands are referred to the amended act does not provide for the issue of bonds, but requires that "the expense thereof shall be deemed a town charge and shall be levied and collected the same as other town charges." This differentiation, taken in connection with the opinion in the Town of Salina Case, makes it clear to my mind that the legislature did not intend to authorize the issue of bonds for the expense of the adjacent lands, but intended that this money should be raised by taxation at the same time with other expenses of the town; that is, in the annual tax levy and not by the issue of bonds. Any other conclusion defeats the plain language of the amended act. Hubbard v. Sadler, 104 N. Y. 223, 10 N. E. 426, cited by the plaintiff's counsel, is in no way inconsistent with the principles stated. In that case the statute under consideration gave to the supervisors express power to issue bonds, and the court held that the board acted within the scope of the statute in issuing the bonds. No such authority is given by the amended statute before us. I am of opinion that the judgment should be reversed, and judgment entered for the defendant.