(62 App. Div. 577.)

### NEW YORK & R. CEMENT CO. v. DAVIS et al.

(Supreme Court, Appellate Division, Third Department.   June 28, 1901.)

1. VILLAGE BONDS—LEGALITY—RESOLUTION.
    Village Law, § 128, declares that, if authorized by an election, money may be borrowed by a village on its bonds or other obligations to purchase waterworks, but that no contract shall be made unless a proposition has been adopted authorizing the board of trustees to raise such money. *Held* that, where a proposition was submitted that a sum should be "raised upon the village" to purchase waterworks, the proposition, on its adoption by the electors, conferred authority on the trustees to issue bonds, instead of securing funds by taxation.

2. SAME—RESTRAINING ISSUE—EVIDENCE.
    In a suit to restrain the issue of village bonds for the purchase of waterworks on the ground that the proposed issue was illegal, it was proper to refuse to admit testimony as to how the witnesses voted on the proposition as to the issue, for the purpose of showing there was not a majority in favor of the issue; there being no evidence discrediting the certificate of the election officials, showing illegal votes to have been cast, or of any irregularities.

3. SAME—COSTS.
    Where, in a suit to restrain the issue of village bonds on the ground that the proposed issue was illegal, the complaint was properly dismissed, the case was a proper one for an extra allowance.

Appeal from trial term, Ulster county.

Suit by the New York & Rosendale Cement Company, suing on behalf of itself and other taxpayers of the village of Rosendale, against W. Jerome Davis and others, trustees of the village of Rosendale, and others. From a judgment dismissing the complaint, and from an order granting an additional allowance, plaintiff appeals. Affirmed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

Amos Van Etten (Howard Chipp, of counsel), for appellant.
John J. Linson and John G. Van Etten, for respondents.

EDWARDS, J.  On March 5, 1900, at a meeting of the board of trustees of the incorporated village of Rosendale, a resolution was passed directing the submission at the annual election to be held on March 20th of a proposition to purchase the waterworks system of the Rosendale Waterworks Company, a domestic corporation which had been supplying the village with water under a contract which contained an option for the purchase by the village of the company's system for the sum of $40,000.  Notice of the time and place of holding the election, and setting forth the proposition to be voted on, was given as required by the village law (Laws 1897, c. 414); and at the annual election held on March 20th the following proposition, conformable with the resolution and notice, was voted on, by ballot, by the qualified electors of the village: "Resolved, shall there be raised upon the village of Rosendale the sum of forty thousand dollars for the purchase of the waterworks system from the Rosendale Waterworks Company?"  The result of the vote, as certified by the inspectors, who duly canvassed it and filed their certificate, was 52 in favor of the proposition, and 39 against it.  Thereafter resolu-

tions were adopted by the board of trustees to purchase the system of the Rosendale Waterworks Company for $40,000, and for that purpose to issue and to sell, in the form and manner provided by the village law, the bonds of the village in the principal sum of $40,000. Before the sale of the bonds was consummated, this action was brought to restrain their issue and sale, on the alleged ground of their illegality.

The provisions of the village law under which the proposition was submitted and the proceedings were taken to issue and to sell the bonds of the village are as follows:

"A proposition may be submitted at a village election for the establishment of a system of waterworks for supplying the village and its inhabitants with water, or for the acquisition of an existing private system, at an expense in either case not exceeding the sum stated in the proposition." Section 221. "If a proposition be adopted for the acquisition of an existing system of waterworks, the board of water commissioners may purchase the same at a price not exceeding the sum specified therein." Section 222. Section 128 provides, "If authorized by an election, money may be borrowed by a village upon its bonds or other obligations, payable in future fiscal years, for the purpose of purchasing * * * waterworks;" and section 129 prescribes the form and manner of the bonds to be issued. Section 59 provides that "the board of trustees may, upon its own motion, * * * cause to be submitted at a village election, a proposition upon any question which may be lawfully decided thereat"; and section 55 requires the board, at least 10 days before the election, to cause notice to be published and posted of the time and place of holding the election, "and setting forth in full all propositions to be voted upon." Section 60 requires that "all votes upon a proposition submitted at a village election shall be by ballot; and, unless otherwise provided, the provisions of the election law, relating to ballots, apply to propositions submitted, under this chapter"; and section 41, prescribing the qualifications of a voter on a proposition, says, "He must be entitled to vote for an officer, and he or his wife must also be the owner of property in the village assessed upon the last preceding assessment roll thereof."

The regularity of the submission of the proposition to the qualified voters is not questioned. The main contention of the appellant is that the proposition did not confer authority upon the board of trustees to issue the bonds of the village. This depends upon the construction to be given to the words "raised upon the village of Rosendale," which the appellant maintains conferred authority to raise money for the purchase of the water system by taxation only, and not by the issuing of bonds. I do not think that the word "raised" is used in the village law in that restricted sense. To "raise money," in its ordinary import, is simply to procure it. When applied to an individual or a business corporation, it means the procuring of money in any of the usual methods,—by note, mortgage, or other obligation. As applied to municipal corporations, its ordinary import is the procuring of money by taxation or by the obligations of the corporation. The usual method of a municipal corporation of raising money for ordinary purposes is by taxation; for extraordinary purposes, by its obligations, generally in the form of bonds. Where a statute authorizes the borrowing of money, the words "to raise money" are equally apt to signify raising by taxation or by municipal obligation. That this is the commonly accepted significance of the words seems to me to be beyond controversy, and this too is their legal significance, except where used in a statute

in which it appears that they were intended to be used in a more restricted sense. I do not think that the case of Wells v. Town of Salina, 119 N. Y. 280, 23 N. E. 870, 7 L. R. A. 759, is authority for the contention of the appellant's counsel that the word "raise," as used in statutes, signifies exclusively to raise by taxation. The court did not attempt in that case to give a legal definition of the word "raise" as used in all statutes, but only held that in the statute under consideration it was used in the restricted sense of raising by taxation. The question there was as to the power of the supervisor to give notes binding on the town, in pursuance of resolutions passed at a town meeting, to defray the expenses of litigation. It arose under a section of the revised statutes providing that:

"The electors of each town shall have power at their annual town meeting * * * to direct the institution or defense of suits at law or in equity, in all controversies between such town and corporations, individuals or other towns," and "to direct such sum to be raised in such town for prosecuting or defending such suits, as they may deem necessary."

The court there said: "What is here meant by the word 'raised'?" and holds that it there means raised by taxation, for the reason, as there said, that the statutes under consideration relating to the "powers, duties and privileges of towns" (Rev. St. pt. 1, c. 11, tits. 1, 2) do not confer the power upon towns to borrow money, and that towns possess no such powers unless expressly conferred or necessarily implied. That the court did not there intend to restrict the meaning of the word "raised," when used in a statute, to raising money by taxation only, is evidenced from its subsequent explanation in Birge v. Bridge Co., 133 N. Y. 477, 31 N. E. 609, where a different significance was given to it. In the latter case the court said:

"It is urged, however, that we have decided in the Town of Salina Case [supra] that the provision for 'raising money' in a statute means raising it by taxation at once, and not by the means of borrowing the same to be repaid at some future time. That is true in the limited sense in which it was applied in the Salina Case. We were asked in that case to imply a power to borrow money from the grant of power to raise it. Considering the purpose of the grant and its terms, and looking at the context, we became convinced that it was never the legislative intent that towns should have the power to borrow money for the particular purpose for which they were given power to raise it in that case."

The reason for limiting the meaning of the word "raise" in Wells v. Salina, supra, to raising by taxation, does not exist here, where the statute expressly provides for borrowing money upon the bonds or other obligations of the village. That the meaning of the word "raise" in the village law is not restricted to the raising of money by taxation is, I think, apparent upon examination of various provisions of the act. The last clause of the section quoted (section 128), which authorizes the borrowing of money for the purpose of purchasing waterworks, reads as follows:

"No contract shall be made involving an expenditure by the village, unless the money therefor is on hand, or a proposition has been adopted authorizing the board of trustees to raise such money."

In section 274, relating to sewers, entitled "Expense of Construction; How Raised," as well as in other provisions which need not be cited, it is obvious, I think, that the word "raised" is used in the

sense of procuring money either by taxation or by municipal obligations. I am of opinion that the words "raised upon the village of Rosendale," contained in the resolution adopted by the taxpayers at the village election, were not only appropriate to signify the procuring of money by the issuing of bonds, but, in view of the fact that the purchase of the water system involved the extraordinary expenditure of $40,000, being about 9 per cent. of the assessed valuation of the property of the village, they were understood by the taxpayers to have the significance attached to them by the respondents; and the adoption of the resolution was therefore sufficient authority for the exercise by the board of trustees of the discretion confided to them to issue the bonds of the village under section 128 of the village law.

The court did not err in its refusal to receive the testimony of two of the plaintiff's witnesses as to how they had voted on the proposition. They were shown to be legal voters, and that fact was not disputed. Assuming that it was the purpose of the plaintiff to prove by the oral testimony of the taxpayers who had voted on the proposition that there was not a majority in its favor, no foundation had been laid for the reception of such testimony. The statute has made the question whether or not a proposition had the assent of the majority of those voting on it to depend upon the ballots found in the box at the close of the polls, as evidenced by the certificate of the inspectors, and not upon the frail memory of voters under the strain of temptation. Here there was not the slightest evidence to discredit the certificate of the sworn officials, none tending to show that illegal votes had been cast, nor the existence of any of those irregularities usually found in contested election cases. Indeed the testimony of the plaintiff's witnesses showed that the election had been fairly and properly conducted, and the canvass of the votes made by the inspectors openly in the presence of watchers, and without the shadow of suspicion of any fraud or error. Under these circumstances, it was not the duty of the court to enter upon an investigation by the testimony of voters as to how they had voted. It was said by the court in People v. Thacher, 55 N. Y. 536, 14 Am. Rep. 312:

"In election cases, if the return is discredited, so that it is no longer evidence of the right of the party claiming under it, then the question who received the majority of the votes is to be ascertained by other legal proof. * * * In this case, if the return was rejected, the parties were remitted to other proof to ascertain the result of the election in the disputed district."

The trend of recent legislation on the subject is to preserve inviolate the secrecy of the ballot. Such was the purpose of the statute under which the election was held at which the proposition in question was submitted to the voters. As was said by the court, in referring to the statute, in People v. Board of Onondaga Co. Canvassers, 129 N. Y. 403, 29 N. E. 327, 14 L. R. A. 624:

"The primary aim and object was to enable the voter to cast a ballot for the candidates of his choice, without the possibility of revealing by the act of voting the identity or political complexion of the candidates voted for. * * * It is reasonable, therefore, to assume that any construction of this statute which would permit ballots to be cast and counted that would reveal the way the voter using them voted should be avoided, as contrary to the

true policy and intent of the law. The idea at the very foundation of the law was secrecy."

Not infrequently the same reasons exist for jealously guarding the secrecy of the ballot when propositions, as when candidates, are voted on. If, under the facts of this case as shown when the rejected evidence was offered, voters may be compelled to testify how they voted, a ready method is furnished whereby the beneficent purpose of the statute may be defeated. We do not hold that under proper conditions it may not be permitted to go behind the returns in a direct action to test the validity of an election, nor, perhaps, in an action of this character. We simply hold that when the testimony was offered in this action the proper occasion had not arisen for its introduction.

There are no other exceptions to the admission or rejection of evidence for which the judgment should be reversed, and I am of opinion that it should be affirmed, with costs.

Although an appeal was taken from the order granting an additional allowance, the question was not raised by counsel in his brief or argument. The case was a proper one for an allowance, the amount was moderate, and the order should be affirmed.

Order granting additional allowance affirmed, without costs. All concur.