JAMES C. BIRGE, Appellant, v. THE BERLIN IRON BRIDGE COMPANY et al., Respondents.

Where an order of General Term vacating a temporary injunction states that it is based on the ground that the plaintiff has not the legal right to maintain the action, a question of law is presented which is reviewable here.

H. R. Tel. Co. v. W. T. & R. R. Co. (121 N. Y. 397), distinguished.

The provision of the act of 1869 (§ 1, chap. 855, Laws of 1869) and 1875 (§ 6, chap. 482, Laws of 1875, amended by chap. 451, Laws of 1885), authorizing towns to borrow money for the purpose of building or repairing bridges, did not affect the power of a town to raise money by immediate taxation, by vote at open town meeting for the improvement of its roads and bridges; that power and the manner of its exercise remained, and was limited in its exercise to a total sum of $1,250 and if over $500 the vote must be by ballot. (1 R. S. 502, § 4; chap. 274, Laws of 1832; chap. 615, Laws of 1857; chap. 122, Laws of 1883, as amended by chap. 82, Laws of 1885.)

The act of 1886 (Chap. 259, Laws of 1886), permitting special town meetings "to vote on the question of raising and appropriating moneys for the construction and maintenance of any bridge or bridges" did not abolish the limitation as to the amount to be raised by immediate taxation; it simply authorized those sums to be so raised which, prior to the passage of the act, could only have been authorized at an "open" or regular town meeting.

Wells v. Town of Salina (119 N. Y. 281) and Huggans v. Riley (125 id. 88), distinguished.

A petition for a call for a special town meeting recited that it was pursuant to said act of 1875; the call itself stated that it was made "by

virtue of the statutes of the state of New York in such case made and provided." *Held*, that the town meeting so called had power to act under the statute of 1875, and, therefore, could authorize the borrowing of money for the erection of a bridge; that the provision of said act limiting that authority to a special town meeting, "called for the purpose," simply required a meeting called for the purpose of considering and deciding the question of erecting or repairing the bridge, and so, it was not necessary for the call to state that it was for the purpose of borrowing the money.

In an action brought by plaintiff, as a taxpayer of a town, to restrain defendants, a bridge company and the highway commissioners of the town, from further proceeding under a contract between them for the erection of a new bridge within the town, the complaint alleged, in substance, the making of the contract, by which W., the commissioner, agreed to pay $9,200 for the erection of the bridge, which was more than $3,000 in excess of its value, and was entered into for the purpose of cheating and defrauding the town; that pursuant to the action and vote at a special town meeting duly called, application was made to the board of supervisors of the county to authorize the town to borrow money for the purpose of building the bridge; that said board duly passed the act granting the authority asked for and appointing commissioners to construct the bridge; that said commissioners duly qualified and entered into a contract with another bridge company to construct the bridge at the agreed price of $5,670, which company had prepared the material and placed it on the ground to perform its contract, but that defendants threatened to remove it. *Held*, that the complaint set forth a good cause of action; that the contract between defendants was illegal; and so, that an order of' General Term vacating a temporary injunction on the ground that plaintiff had not the legal right to maintain the action was error.

(Argued June 6, 1892; decided June 17, 1892.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, made November 30, 1891, which reversed an order of Special Term denying a motion to vacate a temporary injunction granted herein.

This action was brought by plaintiff, as a taxpayer of the town of Oswegatchie, St. Lawrence county, to restrain defendants, the Berlin Iron Bridge Company and Joseph E. Wagner, the supervisor of said town, from carrying out a contract claimed by them to have been made for the erection of a bridge across the Oswegatchie river, in said town, and to have said contract adjudge 1 illegal and void.

The complaint alleged in substance that defendants claim to have entered into a contract for the construction of said bridge, Wagner agreeing to pay therefor $9,200; that said sum is more than $3,000 in excess of a fair price for said bridge, and was entered into for the purpose of cheating and defrauding the town and its taxpayers; that a special town meeting was duly held in said town, and such action was duly taken that an application was duly made to the board of supervisors of the county to authorize the town to borrow money not exceeding $10,000, foi the purpose of erecting the bridge in question, and to appoint commissioners for that purpose that pursuant to such application said board passed an act authorizing the borrowing of the money, not exceeding the sum specified and appointing certain persons named as commissioners, to construct the bridge; that said commissioners duly qualified, and thereafter duly entered into a contract with the King Iron Bridge and Manufacturing Company to construct and erect the bridge for the price of $5,670, in pursuance whereof said company had prepared the material for said bridge and placed a considerable quantity thereof upon the ground; that defendant threatened to remove the same; that the bridge so contracted for is a much more valuable one than that proposed to be erected by defendants.

Defendants claimed that so much of the action of the special town meeting as asked for authority to borrow the money was void, because the special town meeting was not called for that purpose, and that defendant Wagner had power to act under the vote authorizing the construction of a bridge at a cost not to exceed $10,000.

Further facts are stated in the opinion.

*Thomas Spratt* and *Daniel Magone* for appellant. A highway commissioner has no authority within the laws of this state, to erect a new bridge, except with money already provided and in his hands, or appropriated pursuant to law, to come into his hands for that purpose. (*Mather* v. *Crawford*, 36 Barb. 564; *Huggans* v. *Riley*, 21 N. Y. S. R. 706; *W. T. B. Co.* v. *Bar-*

*nett,* 1 id. 600 ; *Moray* v. *Town of Newfane,* 8 Barb. 645 ; *Town of Fishkill* v. *F. & B. P. R. Co.,* 22 id. 634 ; *Loomis* v. *Little Valley,* 75 N. Y. 316 ; *Everett* v. *Board of Supervisors,* 93 id. 397 ; Laws of 1879, chap. 67.)   There is no power in a special town meeting to vote a direct tax for highway or bridge purposes beyond $1,250.   (Laws of 1857, chap. 615 ; Laws of 1866, chaps. 259, 340 ; Laws of 1874, chap. 235 ; Laws of 1875, chap. 482, § 1 ; Laws of 1876, chap. 257 ; Laws of 1885, chap. 45, § 6.)   The legislature had the power to appoint commissioners to build a bridge or highway previous to the adoption of the amendment of article third of the Constitution in 1874.   (Laws of 1866, chap. 340 ; Laws of 1874, chap. 235 ; Laws of 1875, chap. 482, § 1 ; Laws of 1876, chap. 257, § 6 ; Laws of 1885, chap. 451, § 6 ; *Town of Kirkwood* v. *Newburg,* 12 N. Y. S. R. 429 ; *People* v. *Meach,* 14 Abb. Pr. 429.) The town of Oswegatchie had the legal right to apply to the board of supervisors by reason of the action of the special town meeting, held November 2, 1889.   The meeting was called for the purpose of raising and appropriating the necessary money to maintain the bridge across the Oswegatchie river at the Eel Weir rapids.   (Laws of 1885, chap. 451.)   This action can be maintained.   (Laws of 1875, chap. 482, § 1 ; Laws of 1885, chap. 451.)   On an appeal to the Court of Appeals from an order of the General Term, dissolving a temporary injunction, if it is stated that the action cannot be maintained, a question of law is raised which is reviewable by the Court of Appeals.   (*Anderson* v. *Anderson,* 112 N. Y. 104 ; *Tolman* v. *S., B. & N. Y. R. R. Co.,* 92 id. 353.)

*Louis Marshall* for respondents.   The order appealed from resting in the discretion of the General Term and involving the consideration of questions of fact, is not appealable to this court, so far as the review of any controverted questions of fact are concerned.   (*Van De Water* v. *Kelsey,* 1 N. Y. 533 ; *Paul* v. *Munger,* 47 id. 469 ; *People* v. *Schoonmaker,* 50 id. 499 ; *Pfohl* v. *Simpson,* 59 id. 174 ; *Hatch* v. *W. U. T. Co.,*

93 id. 640; *H. R. T. Co.* v. *W. T. & R. Co.*, 121 id. 397.)
There is no legal evidence to sustain the charge that the con-
tract between the defendants was a fraudulent one; on the
contrary, the uncontradicted evidence shows that the high-
way commissioner exercised due care, caution and good judg-
ment in determining upon the particular contract that he did,
and that in all probability he came to a wise determination.
At all events, it cannot be said that upon all the evidence a
finding of fraud was required by a preponderance of the evi-
dence. (*Baird* v. *Mayor, etc.*, 96 N. Y. 592; *Shultz* v.
*Hougland*, 85 id. 457; *Grover* v. *Wakeman*, 11 Wend. 108;
*Talcott* v. *City of Buffalo*, 125 N. Y. 280; Cooley's Const.
Lim. [5th ed.] 255; *People* v. *Ferry*, 108 N. Y. 1; *Mor-
gan* v. *City of Binghamton*, 102 id. 504; *Martin* v. *Mott*,
12 Wheat. 19; *Allin* v. *Blunt*, 3 Story, 742; *Gould* v.
*Hammond*, McCall, 235; *Haven* v. *City of Lowell*, 5 Met.
40; *Good* v. *Deland*, 121 N. Y. 1; *In re Dugro*, 50 id.
513; *H. G. Co.* v. *Mayor, etc.*, 33 id. 309.) The bridge
over the Eel Weir rapids being one which the town was
authorized to maintain, the highway commissioner was author-
ized to enter into a contract with the Berlin Iron Bridge Com-
pany for its construction, the special town meeting having
placed at his disposal the necessary means, and no valid action
having been taken to deprive the highway commissioner of
the right to exercise his statuory functions. (*Hover* v. *Bark-
hoff*, 44 N. Y. 113; *Mayor, etc.*, v. *Sands*, 105 id. 210;
*Hugguns* v. *Riley*, 51 Hun, 501; 125 id. 88; Laws of 1857,
chap. 615, § 1; 1 R. S. 340, §§ 5, 6; *Bidleman* v. *State*,
110 N. Y. 232; *Wells* v. *Town of Salina*, 119 id. 288;
*Boots* v. *Washburn*, 79 id. 207; Laws of 1840, chap. 305;
*In re T. A. M. E. Church*, 66 N. Y. 395; *Parker* v.
*Board of Supervisors*, 106 id. 392, 410; *Hardman* v. *Bowen*,
39 id. 192; *Westhoff* v *G. L. Ins. Co.*, 107 id. 580; *Tre-
main* v. *Richardson*, 68 id. 617; *Powers* v. *Shepard*, 48
id. 540; *C. T. Co.* v. *R. R. Co.*, 110 id. 250; *Morris* v.
*Crooker*, 13 How. [U. S.] 429; *Blodgett* v. *Holbrook*, 39
Vt. 336; *Havens* v. *City of Lowell*, 5 Metc. 40; *Hark* v.

*Fladwell*, 59 Wis. 177; *Kellar* v. *Savage*, 17 Me. 447; *Whitlock* v. *West*, 26 Conn. 406; *Taft* v. *Barnett*, 58 N. H. 447; *City of Green Bay* v. *Brauns*, 50 Wis. 207; *People* v. *Taber*, 21 How. Pr. 42; *Bergen* v. *Gubna*, 10 Hun, 11.) Independent of the foregoing considerations, there is no power in the board of supervisors to appoint commissioners to build a bridge upon the application of a town, made under chapter 482 of the Laws of 1875, as the board of supervisors, when it authorizes a town to build a bridge, can only do so by authorizing the commissioner of highways to build such bridge. (*Birdsall* v. *Clark*, 73 N. Y. 73; *People ex rel.* v. *Spicer*, 99 id. 235; Laws of 1857, chap. 615, § 2; Laws of 1878, chap. 377, § 1; Laws of 1875, chap. 275; Laws of 1880, chap. 175; *People* v. *Scheiller*, 95 N. Y. 128; Laws of 1875, chap. 482, §§ 6, 34.)

PECKHAM, J. The Special Term of the Supreme Court granted an injunction in this action restraining the defendants from taking any proceedings pursuant to an alleged contract between the defendant Wagner, as sole highway commissioner of the town of Oswegatchie, in St. Lawrence county, and the defendant, The Berlin Iron Bridge Company, during the pendency of this action or until the further order of the court.

The defendants appealed to the General Term from such order, and after argument the order was reversed, and in the order it is recited that it is reversed " on the ground that the plaintiff has not the legal right to maintain this action, and this order is made at this time and in this form for the purpose of allowing an appeal therefrom to the Court of Appeals." The action is brought by the plaintiff as a taxpayer to enjoin the defendants from further proceeding under an alleged contract between them for the erection of a new bridge within the town above mentioned, on the ground that the contract is wholly illegal as beyond the authority of the highway commissioner to make, and as having been entered into fraudulently, and as being, therefore, an illegal waste and misapplication of the funds of the town. The injunction was

procured upon the verified complaint of the plaintiff and upon
sundry affidavits which, as plaintiff claims, prove the truth of
the allegations contained in the complaint.   The defendants
moved at Special Term, upon affidavits and a verified answer,
to dissolve the injunction, and upon a denial of the motion
they appealed to the General Term.

The language used by the General Term upon the resettle-
ment of its order makes it plain that the order of the Special
Term in effect continuing the injunction was not reversed upon
any question of fact.   That court has by the form of its order
held that the case as presented by the plaintiff, assuming its
entire truth, is one upon which he is not entitled to final relief,
or in other words the plaintiff, upon the facts as he claims
them, proves no cause of action against the defendants.   In
such a case a question of law is raised which we can review.
(*Anderson* v. *Anderson,* 112 N. Y. 104.)

It is unlike the question raised in *Telephone Co.* v. *Railroad
Co.* (121 N. Y. 397), where, under the circumstances therein
appearing, we held the injunction may have been granted under
the discretionary power of the court below, and that it did not
plainly appear that the plaintiff could not in any event succeed
in the action.

In reviewing the order of reversal made by the General
Term we must take the facts as set forth in the plaintiff's
complaint and accompanying papers, and if they show a
good cause of action against the defendants calling for an
injunction, we must reverse the order appealed from and leave
the question of fact, if there be any, to be settled by the court
upon the trial of the action.

The material question lying at the threshold of this investi-
gation relates to the power of the highway commissioner upon
the facts set forth in the case to enter into any contract with
the bridge company.   If upon any view of the facts he had in
this case no power to contract, the order of the General Term
should be reversed.

A commissioner of highways by the Revised Statutes had
power to obtain by assessment by the board of supervisors

upon his town, for the purpose of improving the roads and bridges, of the town, a sum not to exceed $250 in each year. (1 Rev. S. 502, § 4.)

Then by chapter 274 of the Laws of 1832, the highway commissioners could apply in open town meeting for a vote authorizing such additional sum as the electors might deem necessary, not exceeding $250.

By section 1 of chapter 615 of the Laws of 1857, a sum of $750, in addition to all other sums then allowed by law, was permitted to be raised by a vote of the electors in open town meeting for the improvement of the roads and bridges.

By these acts a sum not to exceed $1,250 might be raised in the taxes for the current year, for improving and repairing roads and bridges. The legislature in 1879, by chapter 67, amended the law, chapter 377 of the Laws of 1878, and provided that all moneys raised and collected upon the taxable property of any town in the state for highway and bridge purposes should be paid over by town collectors to the commissioners of highways. This act had reference by its terms to the moneys that were raised and collected by taxation upon the taxable property of the town, and having been raised by taxation and coming into the hands of the town collector, the moneys were to be paid over by him to the highway commissioners. The act had no reference to moneys that might be borrowed under the authority of the supervisors by virtue of other statutes, for such moneys would not come into the hands of the town tax collectors, nor would such funds be regarded as having been immediately raised or collected upon or from the taxable property of the town, although such property would in the end have to bear the burden of paying the moneys borrowed under and by virtue of other statutes providing for such borrowing.

The moneys that might be raised for bridge purposes under the above-cited three statutes, up to the amount of $1,250, it may be asserted, would undoubtedly go to the commissioners of highways. They were moneys which (all but the first $250) were to be raised upon application of the commissioner, and by a vote at open town meeting, and it was undoubtedly neces-

sary that such moneys, when voted to be raised, should be assessed upon the taxable property of the town and raised by tax in that year.

The open town meeting spoken of in the statutes has been regarded as the regular town meeting provided for by law. For many years this was the manner, and the only manner, in which moneys for bridge purposes could be raised by immediate taxation, and any sum beyond the total of the three acts already mentioned could only have been legally raised by special legislative authority.

In 1869 and again in 1875, acts were passed granting further powers of local legislation to boards of supervisors. (Ch. 855 of the Laws of 1869, and ch. 482 of the Laws of 1875.) The latter act has been amended several times. These acts provide, among other things, for permitting boards of supervisors to authorize towns to borrow money to erect and repair bridges, under regulations and proceedings which are therein specially pointed out. Up to the act of 1869, I believe there was no general statute which permitted a town to borrow money for such purpose.

These statutes, of course, had nothing to do with the general law relating to the raising money by taxation by vote at open town meeting for the improvement of the roads and bridges within the town. That power and the manner of its exercise remained as it had been, and, as I have said, it was limited in its exercise to a total sum of $1,250.

The Revised Statutes, in providing for special town meetings, had granted power to such meetings to transact certain business specified in the section. (1 R. S. 341, § 7.) And no special town meeting had any power to act on any subject other than such as was specified in the section. (Id.) It had no power under that section to vote to raise any of the moneys for roads and bridges provided for in the three acts already referred to. Those moneys were to be raised at open town meetings or not at all. In 1886, however, by chapter 259, the section of the Revised Statutes just cited was amended, and special town meetings were granted power, among other things,

"to vote on the question of raising and appropriating moneys. for the construction and maintenance of any bridge or bridges, which said town may be authorized by law to erect or maintain."

I think it would be dealing very liberally with this language to hold that the whole subject of the amount to be raised by immediate taxation upon the town taxpayers was by it reposed in a special town meeting called as provided for by statute upon a notice of but five days. (Chap. 82 of the Laws of 1885.) Up to the passage of this act, the subject had been carefully guarded, and not more than $1,250 could be raised by immediate taxation for the improvement of roads or bridges, and all but $250 of even that sum had to be raised by special application of the commissioners at open town meeting and by a vote of the majority of the electors at such meeting. At the general town meetings experience has shown there is a general attendance of the taxpayers and all subjects of interest to them are quite certain to receive the consideration of the great majority of them. And yet up to 1886 it had not been thought expedient to permit even at such a meeting the raising of more than $1,250 by assessment and taxation in that year for the purpose of improving roads or bridges. By permitting a special town meeting, upon five days' notice, "to vote on the question of raising and appropriating moneys for the construction and maintenance of any bridge or bridges," we do not think the limitation in amount already existing upon the power to raise money at open town meeting was abolished. The purpose of the act of 1886, so far as the question of the raising of the moneys by immediate tax is concerned, is fully answered as we think by the grant of the power to vote at a special town meeting, those sums to be raised by immediate taxation which, before the passage of that act, could only have been authorized at an "open" or regular town meeting. These sums when raised must go into the hands of the highway commissioner.

Our attention is called to the case of *Wells* v. *Town of Salina* (119 N. Y. 280), as deciding something contrary to this proposition. We think there is no inconsistency between the two

cases.   The question here is whether the legislature has granted power to a special town meeting by this language to vote any amount of money to be raised by immediate taxation which may be agreed upon by a majority of those who may be in attendance and who may be but a small minority of the tax- payers, and when they would have no such power if assembled and voting at "open" town meeting.   The question in the *Town of Salina* case was whether it had power to borrow money for the purpose of paying all the prospective expenses of a law suit which, the town voted to take charge of and prosecute to a final determination.   It was held it had no such power ; that none such had been expressly granted it by law, and none was to be implied from the legislation in regard to the power of towns   What was said as to the policy of the law that town charges should be met by annual, recurring taxa- tion, must be viewed in the light of the facts of that case. There was, as we decided, no law permitting the borrowing of money for such a purpose and there was no limitation upon the amount of the expenditure to be made in the prosecution of the case.   It was a leap in the dark and the payment was postponed indefinitely.   In such case it can be very clearly seen that a policy of borrowing money would be a most pernicious one, not to be implied from doubtful language and not to be exercised without a plain grant of power expressed or neces- sarily implied.

The case of *Huggins* v. *Riley* (125 N. Y. 88), is also referred to by the counsel for the defendants.   No question as to the power of a special town meeting to raise money by immediate taxation for road or bridge purposes was therein involved, nor was it spoken of in the opinion of the learned judge nor decided by the court.   The point there arose upon a disagree- ment between the board of supervisors and the town author- ities as to the location of the bridge, during which the high- way commissioner located the bridge and was proceeding to build it when restrained by the action of the plaintiff, who sued as a taxpayer to restrain him from going on.   The money had been voted and the supervisors had authorized the town

supervisor to borrow money for the purpose of building the bridge, but they refused to ratify the location as fixed by the town board. We held that upon these facts the highway commissioner had the right to go on and build the bridge, which he would have done in case the supervisors and the town authorities had agreed upon the location. It was not a question as to which party was to build, the highway commissioner or the board of supervisors, but simply whether the power to build waited and was dependent upon the ratification by the board of supervisors of the location of the bridge as agreed upon by the town authorities. We held, under the facts of that case, that the act of the commissioner, after the supervisors had authorized the borrowing of the money, was valid. There is nothing in the decision of that case at war with the principles under discussion in the case at bar.

In this case we are of opinion that the act of 1886, above cited, does not authorize a special town meeting to provide for raising by immediate taxation a greater sum than $1,250, and if over $500, the vote must be by ballot. (Ch. 122, of the Laws of 1883, as amended by Ch. 82, of the Laws of 1885.) There were also acts, as I have already stated, under the authority of which application might be made to the board of supervisors for authority to borrow money to build or repair bridges. (Laws of 1869 and 1875, *supra*, and Ch. 451, of the Laws of 1885.)

Section 1 of the last above cited act amends subdivision 6 of Ch. 482, of the Laws of 1875, which conferred upon boards of supervisors further powers of local legislation, and such subdivision empowered the board to authorize any town liable to taxation for the erection, etc., of any bridge, to erect and repair the same, and to borrow the money therefor in the manner provided in subdivision 29 of that section. The subdivision contained this further provision : " But no authority shall be exercised under this subdivision, except upon the application of a town liable to be taxed for such purpose, to be made by vote of a majority of the electors thereof voting at a regular town meeting, or at a special town meeting called for the purpose," etc.

It is said this town meeting in question was not called for the purpose, but was in terms called pursuant to the act of 1886 (*supra*), and hence the vote of the town meeting, even if as claimed by the plaintiff, gave no authority for any application to the supervisors under the act of 1875.

It is true the petition for the call for the special town meeting recited that it was "pursuant to Ch. 259, of the Laws of 1886." The call itself was made "by virtue of the statutes of the state of New York in such cases made and provided," and the act of 1886 provides for calling a special meeting for "voting on the question of raising and appropriating moneys," etc.

Upon these facts does it follow that the town meeting thus specially called could not act under the law of 1875, as amended by the act of 1885, already cited? I think not.

The act of 1885 (Ch. 451) provides for authorizing a town liable to taxation for the erection of a bridge, to erect it, and for that purpose to borrow money. The condition is that the supervisors shall not grant any such authority, except upon application of a town liable to be taxed for such purpose, to be made by vote of a majority of the electors thereof voting at a regular town meeting, or at a special one called for the purpose. For what purpose? I think it means a special town meeting called for the purpose of considering the question of the erection, care, repair or maintenance of a bridge. That is the important purpose which the statute meant the special town meeting should be called for. It was to be one which had convened for the purpose of taking that question into consideration, and when thus convened, if it decided to ask the authority of the supervisors to borrow money and pay it in accordance with subdivision 29, of the act of 1885, it could do so. It is not called for by the language, and there is no real benefit to be achieved in holding that the town meeting must not only be called for the purpose of deciding upon the question of erecting or repairing the bridge, but also for the further purpose of borrowing the money. The authority is not to be exercised by the supervisors, "except upon application of a

town liable to be taxed for such purpose." The expression "liable to be taxed for such purpose" means a liability to be taxed for the purpose of erecting, repairing or maintaining a. bridge, and not a liability to be subsequently taxed to pay the money borrowed to erect, etc., the bridge. If the purpose for which the town is liable to be taxed means the erection, repair, etc., of the bridge, then it would seem to follow that "the pur-- pose" of the call of the special town meeting must be of the same nature, that is, the purpose of erecting, repairing or .maintaining the bridge. In this view the call is sufficient which indicates such a purpose, although the petition for it may state it is pursuant to the provisions of the act of 1886.

Having come together under the authority of that act to vote upon the question of raising and appropriating moneys for the construction and maintenance of bridges, if the sum be not more than $1,250, the taxpayers may conclude to raise it all (if none have been already raised) by resort to immediate taxation. In coming together under the provisions of the act of 1886, at a special meeting, the taxpayers have in substance come together under a call for the purpose of considering the question of the erection, etc., of the bridge. If they do not determine to raise the sum not exceeding the limitation of $1,250 by resort to immediate taxation, they may determine to ask the authority of the supervisors to borrow the money. So long as the special meeting was called for the purpose of considering the question of the erection, etc., of the bridge, or what is the same thing, of considering the question of raising and appropriating the moneys for the construction and main- tenance of the bridge, we think it had power to apply under the act of 1875, as amended, for authority to borrow money.

It is urged, however, that we have decided in the *Town of Salina* case (*supra*) that the provision for "raising money" in a statute, means raising it by taxation at once, and not by the means of borrowing the same to be repaid at some future time. That is true in the limited sense in which it was applied in the *Salina* case. We were asked in that case to imply a power to borrow money from the grant of power to raise it.

Considering the purpose of the grant and its terms and looking at the context we became convinced that it was never the legislative intent that towns should have the power to borrow money for the particular purpose for which they were given power to raise it in that case. We thought the expression used in the statute plainly meant to give power to raise money by current taxation only and not by borrowing. Several other statutes were cited of a similar character, which, as we thought, indicated the same intention, viz. : A power to raise money by taxation, but not by borrowing. Here is a case, however, where the legislature has provided by a general statute a means by pursuing which a town can borrow money for the purpose of erecting, etc., a bridge within its boundaries. And the question now is whether a town which has the power to borrow money upon pursuing the plan pointed out by the statute, shall be precluded from doing so because in the call for the town meeting which was to vote on the question, it was stated that it was called pursuant to the statutes of the state for the purpose of raising and appropriating the necessary money to maintain the bridge, etc. .

If it were sought to obtain the power to borrow money from the use of the expressions in the statute giving power to vote on the question of raising and appropriating money for building the bridge, the case of *Town of Salina* (*supra*) would be a good authority against any such implication. Where the power to borrow money exists by virtue of a statute specially granting it on certain conditions, we think the expression stating that the meeting is called to vote upon the question of raising and appropriating the money, is a sufficient compliance with the act of 1885, which imposes a condition that the special town meeting shall be called for the purpose of considering the question of the erection, etc., of the bridge, as already stated.

If the plaintiff's allegations as to the facts are borne out by the proof upon the trial, there would seem to be no doubt of the fact that the written resolution offered by Mr. Magone, requesting the supervisors to authorize the town to borrow

money, was voted upon by ballot and adopted at the special town meeting. The defendants at any rate had no power to enter into the contract which they have attempted to make.

Arriving at this conclusion, it follows that the order of the General Term should be reversed.

Upon the other allegations of the complaint, and those contained in the moving papers, and assuming their truth, we are by no means clear that a fraudulent conspiracy was not made out between these defendants. The fact that a better bridge had been contracted for for $3,600 less money than the total expenditure called for by the defendants' contract of $9,200 is a most significant one.

Another is that the only resolution voted for at the town meeting was one providing for the borrowing of the money by authority of the supervisors and its expenditure by a commission named in the resolution. Notwithstanding such resolution, and soon after its adoption at the special town meeting, the parties defendant make this contract for the construction of the bridge for $9,200, but the highway commissioner refuses to produce it or state its contents when inquired of by reputable citizens unless they procure the consent of the bridge company. He continues such refusal up to the time when criminal proceedings were instituted against him.

The contract also provides for the payment of one-half of the contract price for the bridge when a very small amount of work has been done, and less than a thousand dollars worth of material has been furnished.

. The submission of a false statement of the facts to the Supreme Court for its adjudication is another important fact. There are others which I do not stop to mention. Many, and perhaps all, of these allegations are met by a full denial on the part of the defendants, and hence it would become a subject for investigation by a trial court if it became necessary.

We are not to be regarded as holding that no cause of action for a fraud was stated or proved in the complaint and accompanying papers, assuming the truth of their allegations.

We express no opinion as to their truth or falsity.

The facts as submitted to the Supreme Court in the former litigation are certainly very different from those set forth in the moving papers here.

Our conclusion is that the order of the General Term must be reversed and the Special Term order affirmed, with costs in all the courts.

All concur, except MAYNARD, J., not sitting.

Ordered accordingly.