THE NEW YORK AND ROSENDALE CEMENT COMPANY, Appellant,
  *v.* W. JEROME DAVIS et al., Constituting the Board of
  Trustees of the Village of Rosendale et al., Respondents.

MUNICIPAL BONDS — VILLAGES — RESOLUTION TO PURCHASE WATER
WORKS SYSTEM — LANGUAGE SUFFICIENT TO AUTHORIZE ISSUE OF BONDS
FOR SUCH PURPOSE — VILLAGE LAW, § 128 (L. 1897, ch. 414).   A resolu-
tion, duly adopted by the taxpayers of an incorporated village, that there
"shall be raised upon the village" the necessary amount for the purchase
of a water works system is broad enough, under section 128 of the Village
Law (L. 1897, ch. 414), to authorize the issue of bonds on the credit of the
municipality for that purpose.   A taxpayer's action to restrain such issue
of bonds cannot be maintained on the ground that the words of the resolu-
tion were insufficient to authorize it, nor on the ground that the words of
the resolution, if sufficient to authorize such issue of bonds, are indefinite
in that they also include the power to levy a tax, thus committing the
choice of methods to the board of trustees, a power which the electors are
not authorized to delegate to the board, and which it is not authorized to
exercise.   The statute does not authorize, or suggest even, the payment
of the purchase price of water works by taxation, but does, in terms,
authorize the borrowing of money to pay for them; the language of the
resolution is broad enough to cover it; therefore, the trustees did what the
taxpayers, by permission of the statute, authorized.

  *N. Y. & Rosendale Cement Co.* v. *Keator*, 62. App. Div. 577, affirmed.

  (Argued November 14, 1902; decided January 13, 1903.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the third judicial department, entered July
9, 1901, affirming a judgment in favor of defendants entered
upon a dismissal of the complaint by the court on trial at
Special Term.

  This is a taxpayer's action brought to restrain the trustees
of the village of Rosendale from issuing bonds to purchase
the water works plant in that village in pursuance of a con-
tract between the village and the water company for a supply
of water, which reserved an option to the village to purchase
the water works at any time within five years for the sum of
$40,000.

In March, 1900, the trustees of the village submitted at the annual election the following proposition for vote : " *Resolved,* Shall there be raised upon the village of Rosendale the sum of $40,000 for the purchase of the water works system from the Rosendale Water Works Company ? "

The election officers certified that the number of votes cast on this proposition was 99, of which 52 were in favor of the proposition and 39 against it. Subsequently the board of trustees adopted a resolution to purchase the water works for $40,000 and to issue bonds therefor. The bonds were prepared, but are still in the hands of the village treasurer unissued.

It is claimed, among other things, that the resolution was insufficient to authorize the issue of the bonds, and authorized, by its terms, only the raising of the $40,000 by *taxation.*

*Howard Chipp* and *Amos Van Etten* for appellant. Municipal corporations are not empowered to borrow money unless expressly authorized to do so by statute, and if they are so authorized by statute such statutory authority must be strictly followed. ( *Wells* v. *Town of Salina,* 119 N. Y. 280 ; *Parker* v. *Supervisors,* 107 N. Y. 410 ; *Mayor* v. *Ray,* 19 Wall. 468 ; L. 1897, ch. 414, § 128.) The resolution as submitted to and voted upon by the electors was no authority for the borrowing of money or the issuing of bonds. ( *Wells* v. *Town of Salina,* 119 N. Y. 280 ; *People* v. *Smith,* 45 N. Y. 781 ; *People* v. *Hulbert,* 46 N. Y. 110 ; *Wellsboro* v. *R. R. Co.,* 76 N. Y. 185 ; *Sharp* v. *Speir,* 4 Hill, 76 ; *Clason* v. *Baldwin,* 152 N. Y. 204.) The proposition as submitted to the electors was not broad enough to cover the subsequent issue of bonds. ( *Scott* v. *Twombly,* 20 App. Div. 535.)

*John J. Linson* for respondent taxpayers. The action of the trustees in submitting to the taxpayers the question of the purchase of the water works and the subsequent contract with the water works company were valid and regular. (L. 1897, ch. 447 ; *Hubbard* v. *Sadler,* 104 N. Y. 223 ;

*Vil. of Carthage* v. *Frederick*, 122 N. Y. 268; *Birge* v. *B. I. B. Co.*, 133 N. Y. 477.)

*John G. Van Etten* for Rosendale Water Works Company, respondent. The village of Rosendale having a valid option for the purchase of said water works system for $40,000, and the proposition to complete such purchase and to raise the money therefor having been carried by a majority vote of the qualified electors voting thereon, with the intention on the part of such voters that such sum was not to be raised by taxation, but by borrowing, the board of trustees were authorized to complete such purchase and to raise such sum by the issue of village bonds. (L. 1894, ch. 230; L. 1896, ch. 258; *Town of Gallatin* v. *Loucks*, 21 Barb. 578; *Birge* v. *B. I. B. Co.*, 133 N. Y. 490; *Hubbard* v. *Sadler*, 104 N. Y. 224; *Vil. of Carthage* v. *Frederick*, 122 N. Y. 268; *Mills* v. *Gleason*, 11 Wis. 470; *Clark* v. *Jamesville*, 10 Wis. 136; *State* v. *Madison*, 7 Wis. 688; Dillon on Mun. Corp. [4th ed.] § 127; *Le Couteulx* v. *City of Buffalo*, 33 N. Y. 333; *Scott* v. *Twombly*, 20 App. Div. 535.) Under the facts proved, the complaint was properly dismissed. (*Talcott* v. *City of Buffalo*, 125 N. Y. 280; *Ziegler* v. *Chapin*, 126 N. Y. 342; *Morgan* v. *City of Binghamton*, 102 N. Y. 500.)

*John E. Hardenbergh* for Board of Trustees of Village of Rosendale, respondent.

PARKER, Ch. J. That a village — the total annual expenses of which were but $5,000 and which could only muster ninety taxpaying inhabitants to vote upon the question whether the municipality should buy the water works from which it was obtaining its supply for village purposes — may have expected, from the form of that resolution, that it was voting to pay $40,000 in the next annual tax levy does not seem to us either probable or possible. And we are quite prepared to assert that there was no such understanding on their part, since we

have read the resolution upon which they voted and which, with a notice that it was to be voted upon, had been duly posted for quite a period of time and published in the local newspapers, together with the statement by the village authorities, likewise posted and published, of the expenses for the ensuing year, as passed by the board of trustees of the village at the same meeting at which it was resolved to submit the question whether the option with the water works company should be taken advantage of. This statement contained the following items :

"Highway Fund...................... $2,075.00
"Ordinary Fund......................   2,000.00
"Water Fund........................    925.00."

Certainly the taxpayers were not led to expect that any portion of the moneys thus to be raised was to constitute the fund for the purchase of the water works. They knew that they were voting under a statute which would permit them, in the event that a majority should vote in favor of purchasing the water works, to buy and pay for them by the proceeds of bonds covering the property of the village ; and, logically and necessarily, their vote in favor of the resolution would seem to command that action on the part of the village trustees, who were authorized to act for the village under the statute.

The action taken under the statute was regular in all respects unless it be true that the form of the resolution was so far a mistake as to invalidate all action. The resolution upon which the people voted read as follows : "*Resolved*, Shall there be raised upon the village of Rosendale the sum of $40,000 for the purchase of the water works system from the Rosendale Water Works Company ? "

Now, it is said that we should hold that the vote of the people that there shall "be raised upon the village of Rosendale" did not mean that the $40,000 should be borrowed by the issue of its bonds. The statute permitted the people to provide for the payment by borrowing upon bonds, but it is urged

that the people did not authorize it. This suggestion is so aptly and decisively met by Mr. Justice EDWARDS, who wrote for an unanimous court at the Appellate Division, that I quote from his opinion :

"I do not think that the word ' raised ' is used in the Village Law in that restricted sense. To raise money, in its ordinary import, is simply to procure it. When applied to an individual or a business corporation, it means the procuring of money in any of the usual methods, by note, mortgage or other obligation. As applied to municipal corporations, its ordinary import is the procuring of money by taxation or by the obligations of the corporation. The usual method of a municipal corporation of raising money for ordinary purposes is by taxation ; for *extraordinary* purposes, by its obligations, generally in the form of bonds. Where a statute authorizes the borrowing of money, the words ' to raise money' are equally apt to signify raising by taxation or by municipal obligations. That this is the commonly accepted significance of the words seems to me to be beyond controversy, and this too is their legal significance, except where used in a statute in which it appears that they were intended to be used in a more restricted sense."

Black's Law Dictionary defines " Raising money" as follows : " To raise money is to realize money by subscription, loan or otherwise."

The appellant, in support of its contention that the words "raised upon the village of Rosendale" do not authorize the borrowing of money upon the obligations of the village, cites *Wells* v. *Town of Salina* (119 N. Y. 280); but that case was subsequently distinguished and limited by the *Birge* case (133 N. Y. 477), which, as we understand it, is authority for the proposition that the language employed in the resolution is broad enough to authorize the issue of bonds with which to raise the money needed to pay for the water works, the purchase of which was authorized by the resolution after its adoption by a majority of those voting thereon.

It is further objected that the resolution, if it be sufficient

in terms to authorize the raising of the money on the obligations of the village, authorizes also the raising of the purchase price of the water works by taxation and that, therefore, the choice of methods is left to the trustees, who are given no authority in the premises by statute. Stated in other words, the objection is that the difficulty with the use in the resolution of the word "raised" is not that it is insufficient to include authority to borrow money, but that it is indefinite, in that it also includes the power to levy a tax; the town electors had power to direct the money to be raised in either way, by taxation or by the issue of bonds, but it did not have the power to commit the choice between the alternatives of taxation and debt to the board of trustees.

To this objection there are three answers :

1. The statute does not in terms authorize the payment of the purchase price of water works by taxation, nor does it suggest it even. It would be very strange if it did, for we venture to say that in all of the municipal history of this country there has never been an instance where a municipality took over the water works of a private corporation by which it was being supplied with water and paid the purchase price in the next annual tax levy. Such a, thing could not have been imagined as an event likely to occur in municipal finance, and so it is not surprising that such a situation was not pro_ vided for.

2. The statute does in terms authorize the borrowing of the money to pay for them (§ 128, Village Law); the language of the resolution is broad enough to cover it; therefore, the trustees were proceeding to do what the taxpayers, by permission of the statute, authorized.

3. *Birge* v. *Berlin Iron Bridge Co.* (133 N. Y. 477) is decisive of the question, the same point being presented, and it should be followed. In that case the vote of a special town meeting was in favor of " raising and appropriating moneys for the construction" of a certain bridge. Bridges were at that time, and prior thereto, rarely paid for in any other way than by direct taxation. It was argued that under all these

circumstances the provisions in the resolution for "raising and appropriating" did not authorize borrowing. But this court held, Judge PECKHAM writing: "Where the power to borrow money exists by virtue of a statute specially granting it on certain conditions, we think the expression stating that the meeting is called to vote upon the question of raising and appropriating the money, is a sufficient compliance with the act of 1885, which imposes a condition that the special town meeting shall be called for the purpose of considering the question of the erection, etc., of the bridge as already stated."

The other exceptions do not require discussion.

The judgment should be affirmed, with costs.

O'BRIEN, BARTLETT, HAIGHT, MARTIN, VANN and CULLEN, JJ., concur.

Judgment affirmed. _____