RALPH BALDUCCI, Plaintiff, *v.* ARTHUR STROUGH, Mayor, and
Others.

Supreme Court, Madison County, December 18, 1929.

*Stanley Bliss*, for the plaintiff.

*A. G. Waldo*, for the defendants.

RHODES, J. Plaintiff, a taxpayer of the village of Canastota, brings this action to restrain further proceedings by the village officials under a proposition adopted by the trustees of the village and ratified by the electors providing for a bond issue of $150,000, of which $137,800, or so much thereof as might be necessary, should be issued for the purpose of securing for the village a new water supply. The resolution was ratified at a special election held April 23, 1929. Plaintiff insists that the resolution does not comply with the requirements of section 6 of the General Municipal Law (as amd. by Laws of 1918, chap. 210), in that it does not provide for raising annually by tax a sum sufficient to pay the interest and principal as the same shall become due, and that such an omission is fatal. He relies upon the case of *Lyon* v. *City of Binghamton* (160 App. Div. 222), where it was held that such an omission from a resolution providing for the issuance of bonds to build a municipal lighting plant rendered the resolution void. It seems to me, however, that the statutory provisions applicable here are such that the case referred to is not controlling. There, the decision involved the application of the provisions of the General Municipal Law and the provisions of the charter of the city of Binghamton. In the case at bar I think the provisions of the Village Law provide a complete scheme as to the steps to be taken providing for the issuing of bonds and the raising of money; that the Village Law being in the nature of a special law governing the affairs of villages, should control over the provisions of the General Municipal Law which was designed to apply to all municipalities. Of course, the two statutes are to be construed together and harmonized, but if there is a conflict seemingly the Village Law should be given effect over the General Municipal Law. By the provisions of section 129 of the Village Law (as amd. by Laws of 1928, chap. 346) it is provided in part as follows: " A resolution authorizing the issuance of bonds or other obligations, that is subject to a permissive referendum, shall state: 1. An appropriation of a sum of money to a particular purpose, which purpose may be stated in general terms. 2. Either the amount or maximum amount of bonds or other obligations to be issued. 3. The probable life of the improvement, which period may be given by specific date or by a number of years, in which latter case the period shall be deemed to run from the date of the bonds or other obligations. *All other matters with respect to the issuance of such bonds or obligations may be determined in the original resolution or in a subsequent resolution or resolutions of the board of trustees.*" It thus appears by the provisions of subdivision 3 of the section that if the resolution does not contain " all other matters " with respect to the issuance of bonds, such additional

matters may be provided for in a subsequent resolution or resolutions. I think the proposition or resolution in question substantially complies with statutory requirements. In the case of *Lyon* v. *City of Binghamton* (*supra*) it was argued in the opinion of the court that by the ordinance voted upon, the taxpayers were not informed that the burden of paying the interest and principal of the bonds was being imposed upon them. Assuming that this argument may have been valid as to the city of Binghamton, I do not think it is applicable here. Presumptively, the voters of the village of Canastota were familiar with the law governing that municipality. Such law provided by section 221 (as amd. by Laws of 1927, chap. 650) that the trustees of any village may by resolution provide for the establishment of a system of water works at an expense not exceeding the sum stated in the resolution. Section 110 (added by Laws of 1927, chap. 650) provides that it shall be the duty of the mayor of the village annually to prepare an itemized statement in writing of the estimated revenue and expenditures for the fiscal year which shall contain, among other things, a statement of the amount necessary to pay principal and interest on any bonded indebtedness of the village falling due during the fiscal year. The resolution in question states the amount to be raised, the denomination of the bonds, the rate of interest and that they shall be payable in equal annual installments. It is unnecessary to recapitulate all the various sections of the Village Law relative to taxation and financing. It is sufficient to say that presumptively the electors had sufficient familiarity with practical affairs and with the law governing the village to understand that the bonds, when issued, would have to be paid and that the only method of providing for payment would be by taxation. I think the case of *New York & Rosendale Cement Co.* v. *Davis* (173 N. Y. 235) is controlling in principle here. There, a taxpayer sought to restrain the issuing of bonds authorized in behalf of the village for the purchase of a water works system. It was claimed that the words of the resolution were insufficient to authorize the issuing of bonds. The court there stated relative to the proposition that the taxpayers may not have understood the effect of the resolution voted for, " they knew that. they were voting under a statute which would permit them, in the event that a majority should vote in favor of purchasing the water works, to buy and pay for them by the proceeds of bonds covering the property of the village; and, logically and necesarily, their vote in favor of the resolution would seem to command that action on the part of the village trustees, who were authorized to act for the village under the statute. * * * 2. The statute does in terms authorize the borrowing of the money to pay for them (sec.

128, Village Law); the language of the resolution is broad enough to cover it; therefore, the trustees were proceeding to do what the taxpayers, by permission of the statute, authorized." (See, also, *Village of Bronxville* v. *Seymour*, 122 App. Div. 377.)

Plaintiff also claims that the action which has been taken by the village officials pursuant to the resolution is improvident in that a contract has been let for the sinking of wells to provide water and that the water which will be supplied will be unfit for use because of the large quantity of salt with which it is liable to be impregnated. It appears that the well already dug produces suitable drinking water. Plaintiff swore, as a witness, a geologist whose testimony is to the effect that about sixty feet under the surface in the village is a layer of clay, the extent of which is undetermined; that the soil on top of the clay contains various deposits or pockets of salt and that various wells which have been sunk within the village have yielded salt water; that the village lies within an area or belt extending across the State immediately north of large salt deposits and that the danger is that briny solutions from these salt deposits will percolate beneath the layer of clay in case large quantities of water are pumped from the subterranean strata, thus producing a briny mixture. Defendants swore as a witness another geologist, who agrees in many particulars with the plaintiff's witness as to the character of the soil and the strata underlying the village and in the belts and areas extending across the State. He disagrees with plaintiff's witness in his conclusion that water obtained from the subterranean wells beneath the layer of clay will necessarily be salt. It is manifest that the village is confronted with a difficult proposition. Obviously it has not the resources of a great city to bring in water from remote regions. Either this must be done or a local water supply must be found. I do not think the action of the officials in seeking to provide a water supply by wells should be interfered with by the courts unless the proposed action of the officials is of such a nature as to demonstrate, without question, that absolute and reckless waste of public funds will result. In other words, the court should not substitute its judgment for that of duly constituted officials in the absence of fraud or bad faith. Bad judgment is not bad faith. (*Hearst* v. *McClellan*, 102 App. Div. 336.) (See, also, *Lawson* v. *Lincoln*, 178 N. Y. 636.)

Plaintiff also complains that the proposition in question was adopted because of false statements and extravagant promises made before the election inducing the voters to favor the proposition. Whatever may have influenced the voters, they have expressed their collective will at the polls. The court cannot go behind

that expression to determine what pre-election promises and statements motivated the voters in voting for the proposition.

The application for a permanent injunction should be denied. The temporary injunction heretofore granted should be vacated and plaintiff's complaint dismissed, with costs.