J. EMMETT WELLS, as Executor of SAMUEL H. HINSDELL, Deceased, Respondent, *v.* THE TOWN OF SALINA and Others, Appellants.

*Municipal corporations — capacity of a town to borrow money — ultra vires obligations — reimbursement for moneys advanced to it — subrogation to, and equitable assignment of the claim paid therewith — equitable relief in lieu of mandamus — action at law upon the securities, not a bar to an action in equity.*

It is only upon contracts which are *ultra vires* in the true sense of that expression, that is, upon contracts relating to matters wholly outside of the chartered powers of the corporation, that no liability, legal or equitable, exists against a municipal corporation.

When a stranger has advanced money in good faith, at the request of a town, to pay an indebtedness incurred by the town within its charter powers, and which the town was legally bound to pay, although it could not in its corporate capacity borrow money and contract any obligation in relation thereto, and hence was not liable in an action at law brought upon notes issued for the money so advanced, still the party so advancing the money (applied for a proper town purpose in paying a legal liability existing against the town), becomes the equitable assignee of the claim against the town on which the money advanced by him was applied, and becomes subrogated to the rights of the original cred-

itor on account thereof, and can enforce the same in equity against the town to the extent of the money so advanced and applied.

A resolution was passed by the town of Salina, to assume the prosecution of an action which had been brought to test the validity of certain bonds issued by it, and for the employment of an attorney, Stephens, to conduct the same; one Hinsdell in good faith advanced money to the town, upon notes issued by its supervisor, which was used to pay Stephens for his services and disbursements; the notes not having been paid, Hinsdell's executor brought an action at law thereon against the town, in which the Court of Appeals decided that the notes were not obligations of the town and that the town was not bound thereby. (119 N. Y. 280.) Thereupon, Stephens assigned to Hinsdell's executor all his demands against the town for his services and disbursements, and the executor presented the claim to the board of town audit, at its next annual meeting, for audit and allowance, but the board refused to audit and allow the same, and adjourned *sine die*. Thereupon, the executor, as the equitable assignee of Stephens, brought an action in equity against the town and its board of town auditors, to charge the town with the claim, to the amount advanced by the plaintiff's testator.

*Held*, that by reason of the fact that the moneys, advanced by the plaintiff's testator to the supervisor of the defendant town and upon its credit, were used by the supervisor to satisfy a valid liability of the town to one of its creditors, for legal services and disbursements, the plaintiff became in equity subrogated to the rights and demands of such creditor against the town, to the extent of his advances, and an equitable assignee thereof to that amount; and that a judgment directing the town to pay the plaintiff the amount of his advances, with interest, and directing the town board of audit to allow such judgment as a demand against the town, was correct.

The annual meeting of the board of town audit at which the plaintiff presented the claim and at which his request for its audit and allowance was refused, was held in November, 1890; it appeared that if the plaintiff had waited until a proceeding by mandamus could be taken at the next annual meeting, to be held in November, 1891, the Statute of Limitations of six years would have run, as the claim of the attorney, Stephens, for payment for his services and disbursements accrued on the determination of the litigation conducted by him for the town on April 24, 1885; the plaintiff commenced this action March 10, 1891, while there was no town board in session, and when, under the statutes, none would be in session until the following November. The answer contained no allegation that the plaintiff had a remedy by mandamus, or an adequate remedy at law.

*Held*, that the action, having been commenced within six years after the claim accrued by the determination of the action in which the services were rendered, was not barred by the six years' Statute of Limitations;

That inasmuch as the town board of audit did not act upon the claim, it could not be said that what took place before the board was an adjudication which was conclusive and formed a bar to any further proceedings on the part of the plaintiff to have his claim established;

That the defendants could avail themselves of all defenses to the present action,
 which would have been open to them in a proceeding by mandamus to compel
 the board of town audit to consider and allow the plaintiff's claim. And
 hence, that under these circumstances, the equitable question of subrogation
 being involved, a court of equity had jurisdiction to ascertain the essential facts
 relating to the claim, and to make an adjudication thereon, and to direct
 the town board to audit the claim.

It appeared from the opinion of the Court of Appeals in the action brought by
 the present plaintiff against the defendant town to recover upon the notes
 which had been issued for the money advanced, that that was an action at law
 and tried as such; that the essential point discussed and decided was that the
 town was not liable upon the notes as it had no express authority to borrow
 money, and that the present equitable aspects of the transaction were not con-
 sidered or the present issue litigated under the pleadings in that action.

*Held,* that the former action at law was not a bar to the present equitable action.

APPEAL by the defendants, the town of Salina and the members
of the board of town auditors, from a judgment of the Supreme
Court in favor of the plaintiff, entered in the office of the clerk of
Onondaga county on the 10th day of November, 1892, upon a
decision of the court rendered after a trial by the court at the
Onondaga Special Term.

This was an action in equity brought by the plaintiff as an equi-
table assignee of one Stephens, to charge the defendant, the town of
Salina, for services rendered by said Stephens, and money expended
by him in and about the prosecution of an action wherein one
Francis Alvord and Leman B. Pitcher were plaintiffs, and the Syracuse
Savings Bank and others were defendants, which latter action was
prosecuted to compel the holders of bonds issued by said town in aid
of the Syracuse Northern railroad to surrender them up, and for the
cancellation of the same, upon the ground that the same were
illegally issued and not valid obligations against said town. The
services so rendered by said Stephens were rendered by him as
attorney for the plaintiff in said action, and the money was
expended by him in and about the prosecution of the case.

The contention on the part of the plaintiff was that said action,
brought and prosecuted in the name of Alvord and Pitcher, was in
fact so brought and prosecuted by said town, under its direction and
for its benefit. The evidence justified this contention, and that the
said town was, therefore, liable to pay for the services so rendered and
money expended.

The further claim of the plaintiff was that his testator, having advanced the money to pay Stephens for his said services and the money expended by him in the prosecution of said action, and the same having been appropriated at the request of the town for that purpose — while said town could not in its corporate capacity borrow money, although used for a proper town purpose, and contract any valid obligation in relation thereto, such engagements if entered into being *ultra vires* — yet, nevertheless, the money having been used to pay Stephens for a legal liability existing against said town in his favor, that the party advancing such money, in this case the plaintiff's testator, became the equitable assignee of the obligation against the town, in Stephens' favor, and could enforce the same in equity to the extent of the money so advanced and applied. The plaintiff had also a formal assignment by Stephens of his demand against the town for the demand referred to.

Additional facts in the case are stated in the case of *Wells* v. *The Town of Salina* (reported in 119 N. Y. 280).

In the complaint it is alleged that plaintiff's testator, in good faith, had advanced moneys upon certain notes which the Court of Appeals had decided "were not obligations of said town, and that said town was not bound thereby." It was further alleged in the complaint that the plaintiff's testator, "upon the advancing of said moneys as aforesaid, and the expenditure of the same in the prosecution of said action, became the equitable assignee of said Stephens' claims against the town for services performed and moneys disbursed in said action to the amount of said moneys so advanced by him." It was also alleged that on the 13th of June, 1890, "Said Stephens duly assigned to this plaintiff, as such executor, all his demands against said town for services performed and moneys disbursed as aforesaid, except," etc. It was alleged that the town auditors "refused to receive or consider said claim or place the same on file, and the said claim was not received or considered by them; and that they afterwards, and after considering and passing upon other claims against said town, presented for the first time at the same adjourned meeting of said auditors, adjourned '*sine die*' without so doing." It was further alleged that the plaintiff had been unable to procure the audit of the same in the manner provided by statute, and "that he has no remedy at law in the

premises." It was alleged that the town profited by the services rendered to it, which were paid with the moneys mentioned, " and saved many thousands of dollars " by a compromise, using the litigation had for that purpose.

The answer contained numerous denials and set up the action upon the notes as a bar, and also set up that the plaintiff's supposed causes of action " did not accrue at any time within six years next before the commencement of this action." It did not set up as a defense that the plaintiff had a probable remedy at law; nor did it set up the ten years' statute; nor that the plaintiff had a remedy by mandamus.

The judgment appealed from was to the effect " that the defendant, the town of Salina, pay to said plaintiff * * * the sum of $6,665.96 with interest," besides the costs, and " And that the Board of Town Audit of said town audit and allow said judgment, as a demand against said town." It was found as a conclusion of law : " That by reason of the fact that the moneys advanced by plaintiff's testator to the supervisor of said town and upon its credit, were used by him to satisfy a valid liability of said town to one of its creditors, for legal services and disbursements, the plaintiff became in equity subrogated to the rights and demands of such creditor against the town, to the extent of his advances, and an equitable assignee thereof to that amount." It was also found, " That the said demands of said plaintiff, sued for herein, were duly presented to the Board of Town Audit of said town at its annual meeting in November, 1890, and audit and allowance of the same duly demanded, in compliance with the statute; that said board refused to proceed and audit the same." It was also found that a resolution was passed by the town whereby the town assumed the prosecution of an action brought by Alvord and Pitcher " to test the validity of said bonds issued by said town, and employed said Stephens to prosecute the same, and thereupon became liable to pay said Stephens whatever his services were reasonably worth in the prosecution of said action, and his disbursements made therein, whenever said action should be finally determined, and said services and disbursements became and were a legal obligation against said town." It was also found as a conclusion of law, " That said town by the passage of said resolutions hereinbefore set out, and the acts

of its supervisor, became liable to said attorney, Stephens, for the value of his services and disbursements in prosecuting said action in the name of Alvord and Pitcher, and the amount and value of the same became and was a valid obligation against it."

Exceptions were filed to the decision of the trial court, and to refusals of certain requests as to findings of fact and refusals to find certain propositions of law.

*Hancock, Beach & Devine*, for the appellants.

*Kennedy, Tracy, Mills & Ayling*, for the respondent.

HARDIN, P. J. :

On the 13th day of November, 1890, the plaintiff presented a detailed statement of his claim to the Board of Town Audit, and requested them to audit and allow his claim ; they refused to do so and adjourned *sine die.* In *People ex rel. Wells* v. *Board of Audit* (4 Hun, 94), it was suggested that town auditors could not hold special meetings, and that a mandamus requiring them to reconvene and audit a claim was improper, and that it should have required them to audit the claim at the next annual meeting. If plaintiff had waited the assembling of the next annual meeting of the board in November, 1891, he would have been met with the defense of the Statute of Limitations ; instead thereof, he commenced this action on the 10th of March, 1891, while there was no town board in session, and when, under the statutes, none would be in session until the following November. The answer of the defendants contains no allegations that the plaintiff had a remedy by mandamus, nor does the answer contain a defense that the plaintiff has an adequate remedy at law. (*Town of Mentz* v. *Cook,* 108 N. Y. 504 ; *Ostrander* v. *Weber,* 114 id. 95.) Inasmuch as the claim for services of the attorney accrued in April, 1885, and the same would have been barred by the six years' statute if plaintiff had delayed until November, 1891, for the assembling of the town board, it is difficult to see why the defendants could not avail themselves of all defenses to this action which would have been open for them to present against the proceeding by way of mandamus to compel the board of town audit to consider and allow the claim of the plaintiff. Whether the plaintiff is entitled to an equitable subrogation or not is a legitimate question for the determination of a court of equity. Plaintiff has alleged that he was entitled to

such subrogation, and the defendants have taken issue thereon, and it has been determined in the trial of the action adverse to the defendants. Under such circumstances, inasmuch as the town board had refused to audit the claim, it is difficult to see why a court of equity has not jurisdiction to ascertain the essential facts relating to the claim, and make an adjudication thereon, and to direct that the town board proceed to audit the claim. Inasmuch as the town board did not act upon the claim, it may not be said that what took place before the board was an adjudication which was conclusive, and formed a bar to any further proceedings on the part of the plaintiff to have his claim established. (*The People ex rel. Myers* v. *Barnes*, 114 N. Y. 317.) If it be assumed that the plaintiff is entitled to recover in either aspect of the case, the six years' Statute of Limitations does not stand in his way, as this action was commenced within six years from the 24th of April, 1885, when the services of Mr. Stephens were completed. In *Adams* v. *The Fort Plain Bank* (36 N. Y. 255), it was held that until the determination of an action in which the services of an attorney have been had the Statute of Limitations does not begin to run. It is insisted that the former action, based upon the notes held by the plaintiff, is a bar to this action. By the opinion delivered in that case (*Wells* v. *Town of Salina*, 119 N. Y. 280), it appears that that was an action at law, and was tried as such, and it was intimated that under the pleadings in that case the equitable aspect could not be considered, and the essential point discussed in the opinion was, that the town was not liable upon the notes, as it had no express authority to borrow money. It was observed incidentally in the opinion that " the bills for services and expenses have never been audited or allowed in the mode prescribed by the statutes ; " and in that opinion it was said as follows : " But even if we should assume that it had been sufficiently established that the town had the full benefit of the money thus borrowed, that would not authorize the maintenance of this action. * * * Even if the plaintiff's testator, by the payment of the expenses of that litigation, became the equitable assignee of the bills representing such expenses, and might have taken and presented those bills for audit to the board of town auditors, yet he never did so. He did not bring his action upon the theory that he was an equitable assignee of those bills, and

he gave no proof which entitled him to recover as an equitable assignee, and the case was not tried upon that theory." The language just quoted seems to justify an inference that that action was disposed of solely as an action at law, and that the theory upon which the present action is founded was not considered, as it was not supposed to be within the issues then before the court, and thus it is apparent that the present issues were not litigated under the pleadings in that case; therefore, that action is not a bar to the one now presented. (*Embury* v. *Connor*, 3 Comst. 511; *Palmer* v. *Hussey*, 87 N. Y. 303; *Belden* v. *State*, 103 id. 1.) The language already quoted from the opinion delivered in the Court of Appeals also seems to furnish a warrant to this court to leave the question as to the plaintiff's right to the relief awarded to rest upon the principles and authority as presented in the opinion delivered by KENNEDY, J., at Special Term. We, therefore, forbear any further discussion of the questions presented to us by this appeal. The views already expressed, as well as those contained in the opinion at Special Term, lead to an affirmance.

MERWIN and PARKER, JJ., concurred.

Judgment affirmed, with costs.

The opinion delivered at Special Term was as follows:
KENNEDY, J.:

It is held in *Wells* v. *The Town of Salina* (119 N. Y. 280), that the defendant in that case was not liable to the plaintiff's testator upon the notes mentioned, nor was it liable in an action at law for money lent and advanced by him and used to pay the costs and expenses of the action brought by Francis Alvord, at the time supervisor of said town, and Leman B. Pitcher, against the Syracuse Savings Bank and others, holders of the bonds referred to, for their surrender and cancellation, upon the ground that the special contract sued on the part of the town in relation thereto, was illegal.

One of the questions to be determined is, conceding as was held by the Court of Appeals, that the prosecution of the action of Alvord and Pitcher against the holders of the bonds issued by the town of Salina, to compel their surrender and cancellation, was assumed by said town, and that the same was prosecuted by it and for its benefit, and to relieve itself from its apparent liability on said bonds, and

that such action was so prosecuted for a town purpose within the powers conferred upon town municipalities by the Revised Statutes. Is said town, although not liable in an action at law for money advanced to it at its request, because of a want of power in it to enter into said contract, still liable in equity to be charged with the money so advanced by a stranger in the proceedings, in good faith and actually expended by it in and for a town purpose? It would seem eminently just that a town which has received the money of a party, advanced to it at its request, in good faith and relying upon its undertaking to repay the same to the party advancing it, and which money has been applied by the town to discharge its liability incurred in the prosecution of an action for a town purpose, should refund the same to the party advancing it, and the court should be vigilant in its efforts to discover a way to compel the repayment, if one in fact exists, and the town should not be able to effectually shield itself from its moral liability to pay, by invoking the principle of "*ultra vires*." The plea of "*ultra vires*" should not as a rule prevail, whether interposed for or against a corporation, when it would not advance justice, but, on the contrary, would accomplish a legal wrong. (*Rider Life Raft Co.* v. *Roach*, 97 N. Y. 378.)

All corporations, whether municipal or business, are the creatures of the statute; every power which they possess and which they can legally exercise is derived from the statute; and while purely artificial in this regard, the same moral obligation to faithfully discharge their undertaking honestly entered into, and being within the purpose for which they were created, exists, binds and controls them the same as natural persons. And while the same rule exists in regard to legal obligations, when applied to contracts made beyond the power and authority conferred on municipal as in business corporations, the rule "*ultra vires*," it seems, is more strictly applied to the former than to the latter. (Dillon on Mun. Corp. §§ 457, 936.)

In section 936 it is said: "When an act in its external aspect, is within the general powers of the corporation, and is only unauthorized because it is done with a secret, unauthorized intent, the defense of *ultra vires* will not prevail against a stranger, who in good faith dealt with it, without notice of such intent. A municipal corporation, as against persons who have acted in good faith, and parted with value for its benefit, cannot, unless by virtue of some statu-

tory provision, set up mere irregularities in the exercise of power conferred."

In the case of *Hitchcock* v. *Galveston* (96 U. S. 341), the question of the liability of a municipal corporation upon contracts entered into by it, not within the provisions of the city charter, was considered. In that case the city entered into a contract with the plaintiff to pave certain streets. It had the power to make a valid contract for this purpose, but the city in the contract agreed to make payment for the work in negotiable city bonds payable at a future day, and it was objected by the city that since no express power was given to issue bonds for the purpose, the whole contract was inoperative and void. In his opinion, Justice STRONG, speaking for the court, among other things, says : "If it were conceded that the city had no lawful authority to issue the bonds described in the ordinance and mentioned in the contract, it does not follow that the contract was wholly illegal and void, or that the plaintiffs have no rights under it. \* \* \* It is enough for them that the city council have power to enter into a contract for the improvement of the sidewalks ; that such a contract was made with them ; that under it they have proceeded to furnish materials and do work, as well as to assume liabilities ; that the city has received and now enjoys the benefit of what they have done and furnished ; that for these things the city has promised to pay ; and that after having received the benefit of the contract the city has broken it. It matters not that the promise was to pay in a manner not authorized by law. If payments cannot be made in bonds because their issue is ' *ultra vires*,' it would be sanctioning rank injustice to hold that payment need not be made at all. Such is not the law."

In *The State Board of Agriculture* v. *The Citizens' Street Railway Company* (47 Ind. 407), it is said that, although there may be a defect of power in a corporation to make the contract, yet, if a contract made is not in violation of its charter, or of any statute prohibiting it, and the corporation has by promise induced a party, relying on the promise and in execution of the contract, to expend money and perform his part thereof, the corporation is liable on the contract. To the same effect, *Oneida Bank* v. *Ontario Bank* (21 N. Y. 490). Many other cases might be cited holding the same doctrine.

It is only upon contracts which are "*ultra vires*" in the true sense

of that expression, that is, upon contracts relating to matters wholly outside of the chartered powers of the corporation, that no liability, legal or equitable, exists against the municipality.

The contract in question does not relate to matters wholly outside of the chartered powers of the corporation. On the contrary, it relates to a matter within them, and is only rendered invalid in the manner adopted for procuring the money.

The town had the charter power to bring and prosecute an action to rid itself of the alleged liability it had incurred in issuing the bonds, and it had the power, in the way provided by the statute, to raise the money necessary to defray the expenses of such prosecution, viz., by tax levied and collected; but it had not the power to borrow money for that purpose, and it was not, therefore, liable in an action at law for money so borrowed.

The money advanced by the plaintiff's testator was obtained from him for the use of the town of Salina, pursuant to a resolution passed by the inhabitants of said town, at a regular annual town meeting, held therein in the years 1881 and 1882. These seem to have been regularly and legally adopted in pursuance of a power granted the corporation by statute.

In supposed execution of the directions contained therein, notes were made, signed by the supervisor in his official capacity. These notes were discounted by the plaintiff's testator in good faith, and in reliance upon such resolution incorporated in and forming a part of the notes, and in the belief that the action of the electors of the town was legal and binding upon it, and that it would discharge the obligation incurred. The money was paid over to the supervisor, or to the attorney, Stephens, and was by him expended for and on behalf of the town, to defray the cost and expenses of prosecuting the action brought to annul its bonds, and for a town purpose, and it received the benefit resulting from said prosecution in the refunding of $120,000 of its bonds drawing seven per cent annual interest, and the exchange of other bonds of the town for them, drawing but four per cent interest.

Under these circumstances should the town be permitted to repudiate the moral obligation, at least, to pay the money so advanced for its use and benefit, upon the ground that its contract to borrow

the money was "*ultra vires ?*"  Or will this court, in the exercise
of its equitable power, charge the town with an equitable obligation
to discharge said liability, and to pay the money so advanced ?  It
will be borne in mind that the money in question could have been
raised by the town by tax levied upon the taxpayers therein ; they
by their resolutions adopted expressed their willingness to be taxed
for that purpose; the burden is not one, therefore, forced upon them
against their will or wishes, but is one willingly assumed.  The case
is, therefore, one, as before stated, where the equity power of the
court should be exercised to prevent injustice, if such power exists.

The broad proposition is asserted by text writers upon the sub-
ject : " Persons who have in any way advanced money to a corpora-
tion, which money has been devoted to the necessaries of the corpo-
ration, are considered in Chancery as creditors of the corporation, to
the extent to which the loan has been so expended." (Green's
Brice's Ultra Vires, 623 ; *Talmage* v. *Pell,* 7 N. Y. 328; *Sacketts
Harbor Bank* v. *Codd,* 18 id. 242.)

The question whether a particular contract is binding on a munici-
pal or public corporation or not, is to be tested by determining
whether, in the true construction of the charter and the legislation
applicable thereto, it relates to matters within the corporate powers
and duties.   (Dillon on Mun. Corp. [4th ed.] § 936.)

The following proposition is advanced relating, it is true, to deal-
ings with individuals, but in principle it is suggested to be equally
applicable to corporations, municipal or otherwise : " Whenever
money is loaned or advanced to a person under disabilities and inca-
pacitated from making a binding contract, as to an infant, a lunatic and
the like, and the money is thus loaned or advanced and actually used
for the purpose of paying for necessaries, or necessary expenses
of the party borrowing, although no legal debt arises and the lender
can maintain no action at law to recover back the amount, yet, since
his money was advanced and used for the purpose of paying debts
which would be recoverable at law, he can sue in a court of equity
and stand in the place of those creditors whose debts have been so
paid, and recover back the amount of his advance.  An equitable
debt thus arises under the principle of subrogation." (3 Pom. Eq.
Juris. § 1300.  See cases cited in note to section.)

The doctrine of subrogation being a creature of the courts of

equity, is to be so administered as to secure essential justice without regard to form, and is independent of any contractual relations between the parties to be affected by it. (*McNiel* v. *Miller*, 29 W. Va. 480; *Mathews* v. *Aikin*, 1 Comst. 595.)

I am, therefore, of the opinion that the plaintiff in this case, as the executor of Hinsdell, who in good faith, and in reliance upon the action of the inhabitants of the town legally assembled in town meeting, advanced the money for the town, and the same having been used and appropriated for the benefit of the corporation and for town purposes, is entitled to be subrogated to all the rights the creditors who received the money had against it for obligations illegally contracted by it for town purposes.

The fact that the money advanced by the plaintiff's testator was used to pay its obligations legally incurred, did not operate to cancel such obligations so as to prevent such right of subrogation. The plaintiff's intestate stands in as favorable position to enforce his equitable rights against the town as though he had actually paid its obligations legally incurred to the creditor and taken an assignment of the demand. The fact that instead of going to the creditor and paying him, Hinsdell furnished the money to the town or its attorney in the action, to make such payment, as it seems to me, does not in any manner change the right of the parties.

The plaintiff is the actual assignee of the debt owing to Stephens, its attorney in the litigation, for services rendered by him and disbursements made in and about the same, and stands in a position where he can in equity enforce the obligation. In my judgment it would be the extreme of injustice, in the light of the fact that the town has received the money in question, and it is, as far as, under the circumstances it might, to discharge a legal obligation against it, to allow it to say, it is true the town was liable for the debt, it is true you, the plaintiff, advanced the money in good faith and upon our request, with which we discharged the obligations against it, but because we in fact had no legal right to borrow your money for that purpose, we will not repay you for your advances so made. I should feel compelled to struggle long and hard to find some way under the circumstances to compel the town to do justice, and I cannot but think a court of equity has jurisdiction of the question and the power to compel justice to be done.

The more embarrassing question is whether the action brought by the plaintiff against the town to recover of it for money lent, advanced to it and at its request, and prosecuted to a final judgment against the plaintiff therein, is a bar to this action? I am disposed under the circumstances of this case to hold that it is not. This action differs from the former action in that it is for a different cause of action, this being to force the demands Stephens, as attorney, had against the town for services rendered by him, and for money advanced in the prosecution of an action which the town could legally prosecute, and in which it could incur valid obligations in and about doing so, and to enforce these obligations which the holder could enforce against it, and of which the plaintiff has become the owner, as the equitable as well as legal assignee of the same. (*Zoeller* v. *Riley*, 100 N. Y. 102; *Calhoun* v. *Millard*, 121 id. 69.)

As against the claim of Stephens, the attorney for the town, the Statute of Limitations did not begin to run until the final determination of the action in which the services were rendered and disbursements made.

The case of *Alvord & Pitcher* v. *The Syracuse Savings Bank et al.* was argued in the Court of Appeals on the 11th day of March, 1885, and was decided on the 14th day of April, 1885. This action was commenced on the 10th day of March, 1891. The six years' Statute of Limitations is, therefore, not available to the defendant.

It appears that at a regular meeting of the town board of the town of Salina, held on the 13th day of November, 1890, all the members being present, a detailed statement of the demand was presented to it, with the request that said board would proceed and audit the same. This the board refused to do, upon the ground that the town was not indebted thereon or liable to pay the same or any part thereof. This seems to have been a compliance with requirements of the statute in that regard.

If right in the above conclusions, it follows that the plaintiff is entitled to judgment.